IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

NAWA USA, INC.                          )
    a Delaware Corporation              )
1875 I Street, N.W.                     )
5th Floor                               )
Washington, D.C. 20006                  )
                                        )
       Plaintiff                     )
                                        )
      v.                             )     Civil No.
                                        )
DR. HANS-GEORG BOTTLER                   )
Krueckauweg 3                           )
25335 Elmshorn, Germany                 )
                                        )
     and                            )
                                        )
FERDY EGLI                              )
Freudenbergweg 5                        )
9240 Uzwil, Switzerland                 )
                                        )
     and                            )
                                        )
BERND STERN                            )
Muelhamer Strasse 20                    )
94486 Osterhofen, Germany               )
                                        )
     and                            )
                                        )
PETER KANZLSPERGER                      )
Armin-Knab Strasse 13                   )
94474 Visholfen, Germany                )
                                        )
     and                            )
                                        )
NAWA VERTRIEBS-GMBH                     )
Ziegelhoehe 8                           )
92361 Berngau, Germany                  )
                                        )
     and                            )
                                        )

ALEXANDER GRUTER        )
Pruefeninger Strasse 35       )
93049 Regensburg, Germany    )
                                 )
      Defendants          )
_____)

### COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, FRAUD AND DECEIT, THEFT AND CONVERSION, UNFAIR COMPETITION, BREACH OF FIDUCIARY DUTY, INJUNCTIVE AND DECLARATORY RELIEF, AND AN ACCOUNTING (MONETARY DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF) JURY TRIAL DEMANDED

Plaintiff, NAWA USA, INC. by and through its attorneys, RICHARD E. HAGERTY and

STEPHEN A. WEITZMAN, hereby sues the Defendants, DR. HANS-GEORG BOTTLER,

FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, a

German corporation, and ALEXANDER GRUTER, for Breach of Employment Contract, Fraud

and Deceit, Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and

Declaratory Relief, and an Accounting.  Plaintiff, NAWA USA, INC. seeks both Monetary

Damages and Injunctive and Declaratory Relief in its Complaint.  In support of its Complaint,

Plaintiff, NAWA USA, INC. states as follows:

### NATURE OF ACTION

1. This is a civil action under Delaware state law, both statutory law and common law,

for Breach of Employment Contract (common law), Fraud and Deceit (common law), Theft and

Conversion (common law), Unfair Competition (common law), and Breach of Fiduciary Duty

(statutory law - Delaware Code Title  -  Sections 141 & 142).

2. Plaintiff, NAWA USA, INC. a Delaware corporation, seeks both monetary damages

and injunctive and declaratory relief, including an accounting of all gains and profits made by the

Defendants as a result of their unlawful actions.  The Defendants are either former directors of

Plaintiff corporation, a former officer of Plaintiff corporation, a German corporation which was the unlawful beneficiary of the unlawful actions of the individual Defendants, or the attorney who assisted and counseled the other individual Defendants in their unlawful actions.

JURISDICTION AND VENUE

3. Subject matter jurisdiction of this Court is based upon 28 U.S.C. Section 1332(a), in as much as Plaintiff, NAWA USA, INC. is a citizen of both the State of Delaware and the District of Columbia, and Defendants are all citizens of foreign countries. The amount in controversy exceeds One Hundred Thousand Dollars ($100,000.00), exclusive of interest and costs.

4. This Court has personal jurisdiction over the parties to this case in as much as this case arises from activities concerning a corporation whose principal place of business is located in the District of Columbia.

5. Venue lies in the District of Columbia under 28 U.S.C. 1391(e) in as much as the Plaintiff corporation has its principal place of business in the District of Columbia.

PARTIES

6. Plaintiff, NAWA USA, INC. is a corporation duly organized and existing in good standing under the laws of the State of Delaware. Copies of the Certificate of Incorporation and By-Laws of Plaintiff, NAWA USA, INC. are attached to this Complaint as Exhibits A and B. Plaintiff, NAWA USA, INC. has its principal place of business and executive offices located at 1875 I Street, N.W., 5th Floor, Washington, D.C. 20006. At all times relevant to the facts and circumstances set forth in this Complaint, there were 4,274,075 issued and outstanding shares of common stock of Plaintiff, NAWA USA, INC. Plaintiff, NAWA USA, INC. was and is engaged

in the business of research and development, manufacturing, marketing, and distributing various medical devices, drugs, and cosmetic products under the trade name of NAWA.

7.  Defendant DR. HANS-GEORG BOTTLER, a resident of the city of Elmshorn, 25335, Krueckauweg 3, Country of Germany, was, at all times relevant to the instant Complaint, until May 23, 2003, a member of the Board of Directors of Plaintiff NAWA USA, INC.. Defendant DR. HANS-GEORG BOTTLER was removed as a member of the Board of Directors on May 23, 2003, by lawful action of Plaintiff NAWA USA, INC. by the consent of the stockholders in lieu of a stockholders meeting, pursuant to Delaware General Corporation Law Section 228, and the By-Laws of Plaintiff NAWA USA, INC.

8.  Defendant FERDY EGLI director, a director at the times mentioned is a resident of the city of 9240 Uzwil, Country of Switzerland with an address at Freudenbergweg 5, was, at all times relevant to the instant Complaint, until May 23, 2003, a member of the Board of Directors of Plaintiff NAWA USA, INC.. Defendant FERDY EGLI was removed as a member of the Board of Directors on May 23, 2003, by lawful action of Plaintiff NAWA USA, INC. by the consent of the stockholders in lieu of a stockholders meeting, pursuant to Delaware General Corporation Law Section 228, and the By-Laws of Plaintiff NAWA USA, INC.

9.  Defendant BERND STERN director, a director at the time mentioned is a resident of the City of 94486 Osterhofen, Country of Germany with an address at Mulhamer Strasse 20, a citizen of the country of Germany, was, at all times relevant to the instant Complaint, until May 23, 2003, a member of the Board of Directors of Plaintiff NAWA USA, INC.. Defendant BERND STERN was removed as a member of the Board of Directors on May 23, 2003, by lawful action of Plaintiff NAWA USA, INC. by the consent of the stockholders in lieu of a

4

stockholders meeting, pursuant to Delaware General Corporation Law Section 228, and the By-Laws of Plaintiff NAWA USA, INC.

10.  Defendant PETER KANZLSPERGER, a director at the time mentioned is a resident of the City of 9447 Vilshofen, Country of Germany with an address at Armin-Knab-Strasse 13, Germany, a citizen of the country of Germany, was, at all times relevant to the instant Complaint, until May 23, 2003, a member of the Board of Directors of Plaintiff NAWA USA, INC.. Defendant PETER KANZLSPERGER was removed as a member of the Board of Directors on May 23, 2003, by lawful action of Plaintiff NAWA USA, INC. by the consent of the stockholders in lieu of a stockholders meeting, pursuant to Delaware General Corporation Law Section 228, and the By-Laws of Plaintiff NAWA USA, INC.  Defendant PETER KANZLSPERGER was also, until dismissed on June 20, 2003, Vice President and Chief Operating Officer of Plaintiff NAWA USA, INC.  His duties as Vice President and Chief Operating Officer and the terms of that employment were set forth in a written Employment Contract dated January 1, 2000.  A copy of this Employment Contract is attached to this Complaint as Exhibit C. Defendant PETER KANZLSPERGER is a relative of Mr. Thomas Riesinger, who at all times relevant hereto, including the present, was President and Chief Executive Officer of Plaintiff, NAWA USA, INC. as well as a member of the Board of Directors of Plaintiff NAWA USA, INC.

11.  Defendant NAWA VERTRIEBS-GMBH is a corporation duly organized and existing in good standing under the laws of the country of Germany and is located at Ziegelhoehe 8, 92361 Berngau, Germany.

12.  Defendant ALEXANDER GRUTER, 93049 Regensburg, Pruefeninger Str. 35, Germany, was the attorney retained by Defendants DR. HANS-GEORG BOTTLER, FERDY

EGLI, BERND STERN, and PETER KANZLSPERGER to assist and counsel them in their unlawful and illegal actions detailed in this Complaint.

FACTS

13. On or about January 1, 2000, Plaintiff NAWA USA, INC. and Defendant PETER KANZLSPERGER entered into an Employment Contract in which Plaintiff NAWA USA, INC. hired Defendant PETER KANZLSPERGER as Vice President and Chief Operating Officer of Plaintiff NAWA, U.S.A.

14. The Employment Contract of January 1, 2000, included restrictions on the disclosure or use by Defendant PETER KANZLSPERGER of NAWA Proprietary Information, including information concerning NAWA products, information concerning NAWA's marketing plans or proposals, all to the extent that such information is not readily or generally known outside of NAWA USA, INC. In consideration of the Employee's initial and continued employment with NAWA USA, INC. the Employment Contract further provided that the Employee shall not divulge to anyone any NAWA Proprietary Information, or confidential or proprietary information or material of any third party, unless duly authorized in writing by NAWA USA, INC.

15. Between January 1, 2000 and May 23, 2003, Defendant NAWA VERTRIEBS-GMBH was 80% owned by Plaintiff NAWA USA, INC. Defendant NAWA VERTRIEBS-GMBH was the manufacturing arm for the products of Plaintiff NAWA USA, INC.

16. Some time prior to May 23, 2003, Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER planned, schemed, conspired, and formed the deliberate and unlawful design, purpose, scheme, and conspiracy, or joined or participated in such plan, scheme, design, purpose, and conspiracy, to waste, dissipate, and

improperly use the funds, property, intellectual property, and assets of Plaintiff NAWA USA, INC. in order to allow Defendant NAWA VERTRIEBS-GMBH to improperly utilize these funds, property, intellectual property, and assets for its own benefit.

17.  On May 23, 2003, Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER were removed as members of the Board of Directors, by lawful action of Plaintiff NAWA USA, INC. by the consent of the stockholders in lieu of a Board of Directors meeting, pursuant to Delaware General Corporation Law Section 228, and the By-Laws of Plaintiff NAWA, U.S.A.

18.  On June 20, 2003, Defendant PETER KANZLSPERGER was dismissed as Vice President and Chief Operating Officer of Plaintiff NAWA USA, INC. by Mr. Thomas Riesinger, President and Chief Executive Officer and sole remaining member of the Board of Directors of Plaintiff NAWA, U.S.A.

19.  Despite their having been lawfully removed as members of the Board of Directors of Plaintiff NAWA USA, INC. Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER continued to attempt to function as members of the Board of Directors, calling a "meeting" of the Board of Directors for June 21, 2003, under color of authority.  This "meeting" was called fraudulently and without actual authority.

20.  On June 21, 2003, Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER conducted a "meeting" which purported to be a meeting of the Board of Directors of Plaintiff NAWA, U.S.A.  This meeting was not authorized, was not legal under Delaware statutory law, and was conducted by persons who had been lawfully removed as members of the Board of Directors of Plaintiff NAWA, U.S.A.  Mr. Thomas Riesinger, President and Chief Executive Officer of Plaintiff NAWA USA, INC. and the

only lawfully remaining member of the Board of Directors, was not present at this meeting.

Defendant ALEXANDER GRUETER, an attorney who had been retained by Defendants DR.

HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER,

was present at the meeting, although he did not lawfully represent Plaintiff NAWA USA, INC.

21. At this meeting, Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI,

BERND STERN, and PETER KANZLSPERGER passed a "resolution" stating: "It is

unanimously resolved to reassign the shares of NAWA USA, INC. to PETER

KANZLSPERGER for a purchase price of 20,000 Euros effective immediately and with the

immediate ability of execution." This resolution was not authorized by the legitimate governing

authority of Plaintiff NAWA USA, INC.

22. At this meeting, Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI,

BERND STERN, and PETER KANZLSPERGER also passed a "resolution" unanimously

authorizing Defendant ALEXANDER GRUETER to execute all necessary legal documents and

transactions with respect to the sale and reassignment of the shares of NAWA USA, INC. to

PETER KANZLSPERGER. This resolution was not authorized by the legitimate governing

authority of Plaintiff NAWA USA, INC. Despite being informed by Mr. Thomas Riesinger that

this purported "meeting" was invalid, Defendant ALEXANDER GRUETER has acted on this

"resolution" and has attempted to effect the reassignment of these shares, in derogation of the

rights of Plaintiff NAWA USA, INC. and its shareholders.

23. At this meeting, Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI,

BERND STERN, and PETER KANZLSPERGER also passed a "resolution" stating: "In the

interest of the shareholders it is resolved unanimously that NAWA VERTRIEBS-GMBH is

obliged furthermore to sell the NAWA products as part of orderly business. For this obligation,

NAWA VERTRIEBS-GMBH will be granted protection of the customers as of June 21, 2003. Until the next meeting of the Board of Directors, a licensing agreement will be prepared by PETER KANZLSPERGER in coordination with the Board of Directors". This resolution was not authorized by the legitimate governing authority of Plaintiff NAWA USA, INC.

24. Pursuant to these "resolutions", and from June 21, 2003, to the present, Defendant PETER KANZLSPERGER and Defendant NAWA VERTRIEBS-GMBH continued to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. all to the detriment of Plaintiff NAWA USA, INC. and its stockholders.

## COUNT I
## (BREACH OF EMPLOYMENT CONTRACT)

25. Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit, Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

26. On or about January 1, 2000, Plaintiff NAWA USA, INC. and Defendant PETER KANZLSPERGER entered into and executed an Employment Contract in which Plaintiff NAWA USA, INC. hired Defendant PETER KANZLSPERGER as Vice President and Chief Operating Officer of Plaintiff NAWA USA, INC.

27. The Employment Contract of January 1, 2000, included restrictions on the disclosure or use by Defendant PETER KANZLSPERGER of NAWA Proprietary Information, including information concerning NAWA products, information concerning NAWA's marketing plans or

proposals, all to the extent that such information is not readily or generally known outside of NAWA, U.S.A. In consideration of the Employee's initial and continued employment with NAWA USA, INC. the Employment Contract further provided that the Employee shall not divulge to anyone any NAWA Proprietary Information, or confidential or proprietary information or material of any third party, unless duly authorized in writing by NAWA USA, INC.

28. The actions of Defendant PETER KANZLSPERGER in improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. in continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. after the termination of his employment on June 20, 2003, constitute a breach of the Employment Contract dated January 1, 2000, between Plaintiff, NAWA USA, INC. and Defendant PETER KANZLSPERGER.

29. As a direct and proximate result of this breach of the Employment Contract by Defendant PETER KANZLSPERGER, Plaintiff, NAWA USA, INC. has suffered significant monetary damages. Plaintiff's monetary damages include both loss of profits from the normal business operations of Plaintiff, NAWA USA, INC. as well as certain consequential damages and attorney's fees. Plaintiff, NAWA USA, INC. has also suffered direct, irreparable, and consequential harm as a result of the actions of Defendant PETER KANZLSPERGER, in improperly utilizing proprietary and confidential information in continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC.

30. Plaintiff, NAWA USA, INC. has no adequate remedy at law if Defendant, PETER KANZLSPERGER, is permitted to continue to improperly utilize proprietary and confidential

information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. in continuing to manufacture product, or have manufactured, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC..

WHEREFORE, Plaintiff, NAWA USA, INC. demands judgment against Defendant PETER KANZLSPERGER in the amount of One Million Dollars ($1,000,000.00) compensatory damages, punitive damages, together with interest from date of judgment, plus costs of suit, plus reasonable attorney's fees, as well as a decree ordering specific performance of the written contract dated January 1, 2000, as well as a preliminary and permanent injunction ordering Defendant PETER KANZLSPERGER to immediately cease and desist taking, receiving, concealing, assigning, transferring, copying, or otherwise using or disposing of any proprietary and confidential information properly belonging to Plaintiff NAWA USA, INC..

## COUNT II
### (FRAUD AND DECEIT)

31. Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit, Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

32. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to waste, dissipate, and improperly use the funds, tangible property, intellectual property, and assets of Plaintiff NAWA USA, INC. in order to

11

allow Defendant NAWA VERTRIEBS-GMBH to improperly utilize these funds, tangible property, intellectual property, and assets for its own benefit, have committed the torts of fraud and deceit against Plaintiff, NAWA USA, INC..

33. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to reassign the shares of NAWA USA, INC. to PETER KANZLSPERGER for a purchase price of 20,000 Euros have committed the torts of fraud and deceit against Plaintiff, NAWA USA, INC..

34. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to authorize Defendant NAWA VERTRIEBS-GMBH to sell the products of Plaintiff NAWA USA, INC. as part of "orderly business" have committed the torts of fraud and deceit against Plaintiff, NAWA USA, INC..

35. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in allowing Defendant NAWA VERTRIEBS-GMBH to continue to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and to improperly utilize proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology that belong to Plaintiff NAWA USA, INC. all to the detriment of Plaintiff NAWA USA, INC. and its stockholders, have committed the torts of fraud and deceit against Plaintiff, NAWA USA, INC..

36.  As a direct, proximate, and foreseeable consequence of the fraudulent actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, Plaintiff, NAWA USA, INC. has suffered significant economic damages.  Plaintiff's damages include both loss of profits from the normal business operations of Plaintiff, NAWA USA, INC. as well as certain consequential damages and attorney's fees.

37.  The actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, were done willfully, intentionally, with intent to defraud, with actual malice, and with intent to injure Plaintiff, NAWA USA, INC.  Since the actions of Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER were taken with actual malice, Plaintiff, NAWA USA, INC. is entitled to punitive damages on this count.

WHEREFORE, Plaintiff, NAWA USA, INC. demands judgment against Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, in the amount of One Million Dollars ($1,000,000.00) compensatory damages, One Million Dollars ($1,000,000.00) punitive damages, together with interest from date of judgment, plus costs of suit, and reasonable attorney's fees.

## COUNT III
## (THEFT AND CONVERSION)

38.  Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit,

Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

39.  Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in deliberately and unlawfully wasting, dissipating, and improperly using the funds, tangible property, intellectual property, and assets of Plaintiff NAWA USA, INC. in order to allow Defendant NAWA VERTRIEBS-GMBH to improperly utilize these funds, tangible property, intellectual property, and assets for its own benefit, have committed the torts of theft and conversion against Plaintiff, NAWA USA, INC..

40.  Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in deliberately and unlawfully attempting to reassign the shares of NAWA USA, INC. INC., to NAWA VERTRIEBS-GMBH for a purchase price of 20,000 Euros have committed the torts of theft and conversion against Plaintiff, NAWA USA, INC.

41.  Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, by virtue of their actions in deliberately and unlawfully allowing Defendant NAWA VERTRIEBS-GMBH to continue to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. by improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology that belong to Plaintiff NAWA USA, INC. all to the detriment of Plaintiff NAWA USA, INC. and its stockholders, have committed the torts of theft and conversion against Plaintiff, NAWA USA, INC.

42. As a direct, proximate, and foreseeable consequence of the fraudulent actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, Plaintiff, NAWA USA, INC. has suffered significant economic damages. Plaintiff's damages include both loss of profits from the normal business operations of Plaintiff, NAWA USA, INC. as well as certain consequential damages and attorney's fees.

43. The actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, were done willfully, intentionally, with intent to defraud, with actual malice, and with intent to injure Plaintiff, NAWA USA, INC. Since the actions of Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER were taken with actual malice, Plaintiff, NAWA USA, INC. is entitled to punitive damages on this count.

WHEREFORE, Plaintiff, NAWA USA, INC. demands judgment against Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, in the amount of One Million Dollars ($1,000,000.00) compensatory damages, One Million Dollars ($1,000,000.00) punitive damages, together with interest from date of judgment, plus costs of suit, plus reasonable attorney's fees.

COUNT IV
(UNFAIR COMPETITION)

44. Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit,

Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

45.  Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in deliberately and unlawfully attempting to authorize Defendant NAWA VERTRIEBS-GMBH to sell the products of Plaintiff NAWA USA, INC. as part of "orderly business" have committed the tort of unfair competition against Plaintiff, NAWA USA, INC..

46.  Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in deliberately and unlawfully allowing Defendant NAWA VERTRIEBS-GMBH to continue to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. by improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology that belong to Plaintiff NAWA USA, INC. all to the detriment of Plaintiff NAWA USA, INC. and its stockholders, have committed the tort of unfair competition against Plaintiff, NAWA USA, INC..

47.  As a direct, proximate, and foreseeable consequence of the actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, Plaintiff, NAWA USA, INC. has suffered significant economic damages.  Plaintiff's damages include both loss of profits from the normal business operations of Plaintiff, NAWA USA, INC. as well as certain consequential damages and attorney's fees.

48. The actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, were done willfully, intentionally, with intent to defraud, with actual malice, and with intent to injure Plaintiff, NAWA USA, INC... Since the actions of Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER were taken with actual malice, Plaintiff, NAWA USA, INC. is entitled to punitive damages on this count.

WHEREFORE, Plaintiff, NAWA USA, INC. demands judgment against Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, in the amount of One Million Dollars ($1,000,000.00) compensatory damages, One Million Dollars ($1,000,000.00) punitive damages, together with interest from date of judgment, plus costs of suit, plus reasonable attorney's fees.

## COUNT V
## (BREACH OF FIDUCIARY DUTY)

49. Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit, Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

50. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, as Directors of Plaintiff NAWA USA, INC. owed a fiduciary duty to Plaintiff NAWA USA, INC. and its stockholders, under Delaware corporate law. This fiduciary duty imposed upon them the duty to faithfully, loyally, diligently, prudently, honestly,

and carefully conduct the business of the corporation, to preserve and protect all corporate assets, including, but not limited to, intellectual property, and to act toward and deal with Plaintiff NAWA USA, INC. with the utmost fidelity, loyalty, care, and good faith.

51. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to waste, dissipate, and improperly use the funds, property, intellectual property, and assets of Plaintiff NAWA USA, INC. in order to allow Defendants NAWA VERTRIEBS-GMBH and PETER KANZLSPERGER to improperly utilize these funds, property, intellectual property, and assets, tangible, and intangible, for their own benefit, profit, and advantage, violated their fiduciary duties, both their duties of care and their duties of loyalty, to Plaintiff NAWA USA, INC. and its stockholders, to the detriment of Plaintiff NAWA USA, INC. and its stockholders.

52. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, by virtue of their actions in deliberately and unlawfully allowing Defendant NAWA VERTRIEBS-GMBH to continue to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. by improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology that belong to Plaintiff NAWA USA, INC. violated their fiduciary duties, both their duties of care and their duties of loyalty, to Plaintiff NAWA USA, INC. and its stockholders, to the detriment of Plaintiff NAWA USA, INC. and its stockholders.

53. The intentional actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER in wasting, dissipating, and improperly using the funds, property, intellectual property, and assets of Plaintiff NAWA USA, INC. in

order to allow Defendants NAWA VERTRIEBS-GMBH and PETER KANZLSPERGER to improperly utilize these funds, property, intellectual property, and assets, tangible, and intangible, for their own benefit, constituted an egregious breach of their fiduciary duties to Plaintiff NAWA USA, INC..

54. As a direct, proximate, and foreseeable consequence of the actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, Plaintiff NAWA USA, INC. has suffered significant economic damages. Plaintiff's damages include both loss of profits from the normal business operations of Plaintiff NAWA USA, INC. as well as certain consequential damages and attorney's fees.

55. The actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, were taken willfully, intentionally, with actual malice, and with intent to injure Plaintiff NAWA, U.S.A. Since the actions of Defendants DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, were taken with actual malice, Plaintiff NAWA USA, INC. is entitled to punitive damages on this count.

56. Plaintiff, NAWA USA, INC. is also entitled to injunctive relief, both preliminary and permanent, enjoining Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, to immediately cease and desist from continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and to immediately cease and desist from improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. and to immediately cease and desist from

taking, receiving, concealing, assigning, transferring, copying, or otherwise using or disposing of any proprietary and confidential information properly belonging to Plaintiff NAWA USA, INC..

WHEREFORE, Plaintiff, NAWA USA, INC. demands judgment against Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, in the amount of One Million Dollars ($1,000,000.00) compensatory damages, One Million Dollars ($1,000,000.00) punitive damages, together with interest from date of judgment, plus costs of suit, and reasonable attorney's fees. Plaintiff, NAWA USA, INC. also requests that this court issue an injunction, both preliminary and permanent, ordering Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, to immediately cease and desist from continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and to immediately cease and desist from improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. and to immediately cease and desist from taking, receiving, concealing, assigning, transferring, copying, or otherwise using or disposing of any proprietary and confidential information properly belonging to Plaintiff NAWA USA, INC..

COUNT VI
(INJUNCTIVE AND DECLARATORY RELIEF)

57. Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit, Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

58. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to waste, dissipate, and improperly use the funds, tangible property, intellectual property, and assets of Plaintiff NAWA USA, INC. in order to allow Defendant NAWA VERTRIEBS-GMBH to improperly utilize these funds, tangible property, intellectual property, and assets for its own benefit, have committed the torts of fraud and deceit, theft and conversion, and unfair competition, against Plaintiff, NAWA USA, INC..

59. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to reassign the shares of NAWA USA, INC. to PETER KANZLSPERGER for a purchase price of 20,000 Euros have committed the torts of fraud and deceit, theft and conversion, and unfair competition, against Plaintiff, NAWA USA, INC.

60. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to authorize Defendant NAWA VERTRIEBS-GMBH to continue to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and to improperly utilize proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology that belong to Plaintiff NAWA USA, INC. as part of "orderly business" have committed the torts of fraud and

deceit, theft and conversion, and unfair competition, against Plaintiff, NAWA USA, INC. all to the detriment of Plaintiff NAWA USA, INC. and its stockholders.

61. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, and PETER KANZLSPERGER, by virtue of their actions in planning, scheming, conspiring, and forming the deliberate and unlawful design, purpose, scheme, and conspiracy, to waste, dissipate, and improperly use the funds, property, intellectual property, and assets of Plaintiff NAWA USA, INC. in order to allow Defendants NAWA VERTRIEBS-GMBH and PETER KANZLSPERGER to improperly utilize these funds, property, intellectual property, and assets, tangible, and intangible, for their own benefit, profit, and advantage, violated their fiduciary duties, both their duties of care and their duties of loyalty, to Plaintiff NAWA USA, INC. and its stockholders, to the detriment of Plaintiff NAWA USA, INC. and its stockholders.

62. Plaintiff, NAWA USA, INC. has no adequate remedy at law if Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, are permitted to continue to improperly utilize proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. in continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC.. Therefore, Plaintiff, NAWA USA, INC. is also entitled to injunctive relief, both preliminary and permanent, enjoining Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, to immediately cease and desist from continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and to immediately cease and desist from improperly utilizing

proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. and to immediately cease and desist from taking, receiving, concealing, assigning, transferring, copying, or otherwise using or disposing of any proprietary and confidential information properly belonging to Plaintiff NAWA USA, INC..

WHEREFORE, Plaintiff, NAWA USA, INC. requests that this court issue an injunction, both preliminary and permanent, ordering Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, to immediately cease and desist from continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and to immediately cease and desist from improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. and to immediately cease and desist from taking, receiving, concealing, assigning, transferring, copying, or otherwise using or disposing of any proprietary and confidential information properly belonging to Plaintiff NAWA USA, INC..

COUNT VII
(ACCOUNTING)

63. Plaintiff, NAWA USA, INC. hereby repeats, realleges, and incorporates herein by reference, as if fully set forth herein, the facts and allegations set forth in paragraphs thirteen through twenty-four of this Complaint for Breach of Employment Contract, Fraud and Deceit, Theft and Conversion, Unfair Competition, Breach of Fiduciary Duty, Injunctive and Declaratory Relief, and an Accounting.

64. Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER,

23

have, since June 21, 2003, unlawfully continued to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and have unlawfully continued to improperly utilize proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. in the manufacture, marketing, and sale of such products. While doing so, Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, have not furnished Plaintiff, NAWA USA, INC. with any information regarding the sales data, profits, or financial performance of their manufacture and marketing efforts, from June 21, 2003, through the present.

65.  In order to determine the precise amount of lost profits, past, present, and future, due and owing to Plaintiff NAWA USA, INC. it is necessary to have a full accounting of the sales data, profits, or financial performance of the manufacture and marketing efforts of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, from June 21, 2003, through the present, in order to determine the amount of profits which Plaintiff, NAWA USA, INC. should have earned from June 21, 2003. through the date of trial of this lawsuit.

WHEREFORE, Plaintiff, NAWA USA, INC. requests that this Honorable Court enter an Order granting the following equitable relief:

A.  That Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, be ordered to produce for the Court's Auditor all books, records, contracts, accounts, invoices, ledgers, agreements, licenses, permits, reports, documents of title, deeds and pertinent

correspondence, and other business records in their control relating to the business of Plaintiff

NAWA USA, INC. from June 21, 2003, to the present; and

       B. That the Court's Auditor be ordered to make an accounting to the Court for the

purpose of determining the amount of profits which Plaintiff NAWA USA, INC. would have

earned from June 21, 2003, through the date of trial of this lawsuit, were it not for the unlawful

actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN,

PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH and ALEXANDER GRUETER.

<u>REQUESTED RELIEF</u>

       WHEREFORE, Plaintiff, NAWA USA, INC. demands judgment, jointly and severally,

against Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER

KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, as follows:

    A. One Million Dollars ($1,000,000.00) compensatory damages

    B. One Million Dollars ($1,000,000.00) punitive damages

    C. Interest at the legal rate from date of judgment

    D. Costs, disbursements, and expenses of suit

    E. Reasonable attorney's fees

    F. Equitable, Declaratory, and Injunctive Relief, as follows:

       1. That Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND

STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH. and ALEXANDER

GRUETER, be ordered to produce for the Court's Auditor all books, records, contracts, accounts,

invoices, ledgers, agreements, licenses, permits, reports, documents of title, deeds and pertinent

correspondence, and other business records in their control relating to the business of Plaintiff

NAWA USA, INC. from June 21, 2003, to the present.

2. That the Court's Auditor be ordered to make an accounting to the Court for the purpose of determining the amount of profits Plaintiff NAWA USA, INC. would have earned from June 21, 2003, through the date of trial of this lawsuit, were it not for the unlawful actions of Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH. and ALEXANDER GRUETER.

3. That Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUTER, be enjoined from taking, receiving, concealing, assigning, transferring, copying, or otherwise using or disposing of any proprietary and confidential information properly belonging to Plaintiff NAWA USA, INC..

4. That the Court declare that any and all contracts entered into by Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, purporting to be entered into on behalf of Plaintiff NAWA USA,INC. are null and void, including, but not limited to, the contract purporting to sell and reassign the shares of Plaintiff NAWA USA, INC. to Defendant PETER KANZLSPERGER for a purchase price of 20,000 Euros and the contract purporting to authorize Defendant NAWA VERTRIEBS-GMBH to sell the products of Plaintiff NAWA USA, INC. as part of "orderly business," granting Defendant NAWA VERTRIEBS-GMBH "protection of the customers" as of June 21, 2003.

5. That the Court declare that the actions of Defendant PETER KANZLSPERGER and Defendant NAWA VERTRIEBS-GMBH in, from, June 21, 2003 to the present, continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. improperly utilizing proprietary and confidential information,

profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC. all to the detriment of Plaintiff NAWA USA, INC. and its stockholders, are illegal, null and void.

6. That the Court enjoin, both preliminarily and permanently, Defendant DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, from continuing to manufacture, market, sell, and profit from products that rightfully belong to Plaintiff NAWA USA, INC. and from improperly utilizing proprietary and confidential information, profit projections, company earnings data, intellectual property, and technology belonging to Plaintiff NAWA USA, INC..

7. That the Court declare that Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, are constructive trustees of any and all monies, funds, assets, and property received and acquired by them as a result of the actions set forth in this Complaint or in breach of their fiduciary obligations owed to Plaintiff NAWA USA, INC. and its stockholders, and that Defendants, DR. HANS-GEORG BOTTLER, FERDY EGLI, BERND STERN, PETER KANZLSPERGER, NAWA VERTRIEBS-GMBH, and ALEXANDER GRUETER, be required to account for and pay over to Plaintiff NAWA USA, INC. any and all monies, funds, assets, and property received and acquired by them as a result of the actions set forth in this Complaint or in breach of their fiduciary obligations owed to Plaintiff NAWA USA, INC. and its stockholders.

G. Such other and further relief as the Court may deem just and proper.

I HEREBY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, FRAUD AND DECEIT, THEFT AND CONVERSION, UNFAIR COMPETITION, BREACH OF FIDUCIARY DUTY, INJUNCTIVE AND DECLARATORY RELIEF, AN ACCOUNTING, AND THE APPOINTMENT OF A TEMPORARY RECEIVER AND OTHER INJUNCTIVE RELIEF ARE TRUE AND CORRECT BASED UPON MY INFORMATION AND BELIEF.

NAWA, U.S.A.
Plaintiff
BY: THOMAS REISINGER
PRESIDENT
1875 I Street, N.W., 5th Floor
Washington, D.C. 20006

STEPHEN A. WEITZMAN
D.C. Bar No. 15602
4950 Reedybrook Lane
Columbia, Maryland 21045
(301) 596-5564

Attorney for Plaintiff

Dated: June 19, 2006

<u>JURY DEMAND</u>

Plaintiff, NAWA USA, INC. hereby demands a trial by jury on all legal issues triable by right by jury in this matter.

STEPHEN A. WEITZMAN
Attorney for Plaintiff

Dated: June 19, 2006

Richard E. Hagerty, DC Bar #411858
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, VA 22102
Telephone: (703) 734-4326
Facsimile: (703) 448-6520
richard.hagerty@troutmansanders.com

*Attorneys for Plaintiff*

# EXHIBIT A

*State of Delaware*

## Office of the Secretary of State     PAGE  1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "NAWA USA, INC.",
FILED IN THIS OFFICE ON THE FOURTEENTH DAY OF SEPTEMBER, A.D.
1999, AT 9 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

3095829  8100                          AUTHENTICATION:    9969876

991382494                                      DATE:    09-15-99

22/07 03 DI 17:44 FAX ☒004

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 09/14/1999
991382494 - 3095829

## CERTIFICATE OF INCORPORATION

### OF

### NAWA USA, INC.

FIRST. The name of this corporation shall be:

NAWA USA, INC.

SECOND. Its registered office in the State of Delaware
is to be located at 1013 Centre Road, in the City of
Wilmington, County of New Castle, 19805, and its registered
agent at such address is THE COMPANY CORPORATION.

THIRD. The purpose or purposes of the corporation shall
be: To engage in any lawful act or activity for which
corporations may be organized under the General Corporation
Law of Delaware.

FOURTH. The total number of shares of stock which this
corporation is authorized to issue is:

Ten Million (10,000,000) shares with a par value of One
Tenth of One Mil ($0.0001) per share, amounting to One
Thousand Dollars ($1,000.00).

FIFTH. The name and mailing address of the incorporator
is as follows:

Chennell Mowbray
The Company Corporation
1013 Centre Road
Wilmington, DE 19805

SIXTH. The Board of Directors shall have the power to
adopt, amend or repeal the by-laws.

IN WITNESS WHEREOF, The undersigned, being the
incorporator hereinbefore named, has executed, signed and
acknowledged this certificate of incorporation this
thirteenth day of September, A.D. 1999.

Chennell Mowbray
Incorporator

# EXHIBIT B

22/07 03  DI  17:46 FAX                                                  ☒008

# BYLAWS OF NAWA USA, INC.
### (A Delaware Corporation)

## ARTICLE I: CORPORATE OFFICES

**1.1   REGISTERED OFFICE** The registered office of the corporation shall be fixed in the certificate of incorporation of the corporation.

**1.2   OTHER OFFICES** The board of directors may at any time establish branch or subordinate offices at any place/s where the corporation is qualified to do business.

## ARTICLE II: MEETINGS OF STOCKHOLDERS

**2.1   PLACE OF MEETINGS.** Meetings of stockholders shall be held at any place within or outside the State of Delaware designated by the board of directors. In the absence of any such designation, stockholders' meetings shall be held at the principal executive office of the corporation.

**2.2   ANNUAL MEETING.** The annual meeting of stockholders shall be held each year on a date and at a time as may be designated from time to time by the board of directors.

**2.3   SPECIAL MEETING.** A special meeting of the stockholders may be called at any time but only by a duly constituted majority of the board of directors or by the president of the corporation.

**2.4   NOTICE OF MEETINGS.** All notices of meetings of stockholders shall be given in accordance with Section 2.6 of these bylaws not less than 10 nor more than 60 days before the date of the meeting. The notice shall specify the place, date and hour of the meeting and (i) in the case of a special meeting, the purpose or purposes for which the meeting is called (no business other than that specified in the notice may be transacted) or (ii) in the case of the annual meeting, those matters which the board of directors, at the time of giving the notice, intends to present for action by the stockholders (but any proper matter may be presented at the meeting for such action). Notice of any meeting at which directors are to be elected shall include the name of any nominee who, at the time of the notice, the board intends to present for election.

**2.5   ADVANCE NOTICE OF STOCKHOLDER NOMINEES AND BUSINESS.** Subject to the rights of holders of any class or series of stock having a preference over the common stock as to dividends or upon liquidation, (a) nominations for the election of directors, and (b) business proposed to be brought before any stockholder meeting, may be proposed by the board of directors or by any stockholder entitled to vote in the election of directors generally if such nomination or business proposed is otherwise

1

proper business before such meeting. However, any such stockholder may nominate one or more persons for election as directors at or propose business to be brought before a meeting only if such stockholder has given timely and proper written notice of his intent to make such nomination or to propose such business. To be timely, such notice must be received at the principal executive offices of the corporation not less than (i) 120 calendar days in advance of the date specified in the corporation's proxy statement released to stockholders in connection with the previous year's annual meeting of stockholders, or (ii) in the event that no annual meeting was held in the previous year or the date of the annual meeting has been changed by more than 30 days from the date contemplated at the time of the previous year's proxy statement, then within a reasonable time before the solicitation is made. To be in proper form, such notice shall directed to the president or the secretary and shall set forth: (i) the name and address of the stockholder who intends to make the nominations or propose the business and, as the case may be, of the person or persons to be nominated or of the business to be proposed; (ii) a representation that the stockholder is a holder of record of stock of the corporation entitled to vote at such meeting and, if applicable, intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) if applicable, a description of all arrangements or understandings between the stockholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the stockholder; (iv) such other information regarding each nominee or each matter of business to be proposed by such stockholder as would be required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had the nominee been or intended to be nominated, or the matter been or intended to be proposed by the board of directors; and (v) if applicable, the consent of each nominee to serve as director of the corporation if so elected. The chairman of the meeting shall refuse to acknowledge the nomination of any person or the proposal of any business not *made in compliance with the foregoing procedure.*

**2.6   NOTICE.** Written notice of any meeting of stockholders shall be given either personally or by first-class mail or by telegraphic or other written communication. Notices not personally delivered shall be sent charges prepaid and shall be addressed to the stockholder at the address of that stockholder appearing on the books of the corporation or given by the stockholder to the corporation for the purpose of notice. Notice shall be deemed to have been given at the time when delivered personally or deposited in the mail or sent by telegram or other means of written communication. An affidavit of the mailing or other means of giving any notice of any stockholders' meeting, executed by the secretary, assistant secretary or any transfer agent of the corporation giving the notice, shall be prima facie evidence of the giving of such notice.

**2.7 QUORUM** The holders of a one-third in voting power of the stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the certificate of incorporation. If, however, such quorum is not present or represented at any meeting of the stockholders,

22/07 03  DI  17:47 FAX                                                                                                    ☑010

then either (i) the chairman of the meeting or (ii) the stockholders entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting in accordance with Section 2.8 of these bylaws. When a quorum is present at any meeting, the vote of the holders of a majority of the stock having voting power present in person or represented by proxy shall decide any question brought before such meeting, unless the question is one upon which, by express provision of the laws of the State of Delaware or of the certificate of incorporation or these bylaws, a different vote is required, in which case such express provision shall govern and control the decision of the question. If a quorum be initially present, the stockholders may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum, if any action taken is approved by a majority of the stockholders initially constituting the quorum.

2.8  **ADJOURNED MEETING; NOTICE** When a meeting is adjourned to another time and place, unless these bylaws otherwise require, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business that might have been transacted at the original meeting. If the adjournment is for more than 30 days or, if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.9  **VOTING.** The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of Section 2.11 of these bylaws, subject to the provisions of Sections 217 and 218 of the General Corporation Law of Delaware (relating to voting rights of fiduciaries, pledgors and joint owners, and to voting trusts and other voting agreements). Except as may be otherwise provided in the certificate of incorporation or these bylaws, each stockholder shall be entitled to one vote for each share of capital stock held by such stockholder and stockholders shall not be entitled to cumulate their votes in the election of directors or with respect to any matter submitted to a vote of the stockholders.

2.10  **ACTION BY WRITTEN CONSENT.** Unless otherwise provided in the certificate of incorporation, any action required or permitted to be taken at any annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

2.11  **RECORD DATE FOR STOCKHOLDER NOTICE; VOTING.** For purposes of determining the stockholders entitled to notice of any meeting or to vote thereat, the board of directors may fix, in advance, a record date, which shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors and which shall not be more than 60 days nor less than 10 days before the date of any such

3

22/07 03  DI  17:47 FAX                                                    @011

meeting. In such event, only stockholders of record on the date so fixed are entitled to notice and to vote, notwithstanding any transfer of any shares on the books of the corporation after the record date. If the board of directors does not so fix a record date, such record date shall be at the close of business on the business day immediately preceding the day on which notice is given or, if notice is waived, at the close of business on the business day immediately preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting unless the board of directors fixes a new record date for the adjourned meeting, but the board of directors shall fix a new record date if the meeting is adjourned for more than 30 days from the date set for the original meeting. The record date for any other purpose shall be as provided in Section 8.1 of these bylaws.

**2.12  PROXIES.** Every person entitled to vote for directors, or on any other matter, shall have the right to do so either in person or by one or more agents authorized by a written proxy signed by the person and filed with the secretary of the corporation, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. A proxy shall be deemed signed if the stockholder's name is placed on the proxy (whether by manual signature, typewriting, telegraphic transmission, telecopy or otherwise) by the stockholder or the stockholder's attorney-in-fact. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212(e) of the General Corporation Law of Delaware.

**2.13  ORGANIZATION.** The chairman of the board or in the absence of chairman then the president or, in the absence of the president and the chairman of the board, one of the corporation's vice presidents, shall call the meeting of stockholders to order, and shall act as chairman of the meeting. In the absence of the president, the chairman of the board and all of the vice presidents, the stockholders shall appoint a chairman for such meeting. The chairman of any meeting of stockholders shall determine the order of business and the procedures at the meeting, including such matters as the regulation of the manner of voting and the conduct of business. The secretary of the corporation shall act as secretary of all meetings of the stockholders, but in the absence of the secretary, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**2.14  LIST OF STOCKHOLDERS ENTITLED TO VOTE.** The officer who has charge of the stock ledger of the corporation shall prepare and make, at least 10 days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least 10 days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held. The list

4

shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

2.15 **WAIVER OF NOTICE.** Whenever notice is required to be given under any provision of the General Corporation Law of Delaware or of the certificate of incorporation or these bylaws, a written waiver thereof, signed by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice unless so required by the certificate of incorporation or these bylaws.

### ARTICLE III: DIRECTORS

3.1 **POWERS.** Subject to the provisions of the General Corporation Law of Delaware and to any limitations in the certificate of incorporation or these bylaws relating to action required to be approved by the stockholders, the business and affairs of the corporation shall be managed by or under the direction of the board of directors.

3.2 **NUMBER OF DIRECTORS.** The board of directors shall consist of up to five members. The number of directors may be changed by an amendment to this bylaw, duly adopted by the board of directors or by the stockholders, or by a duly adopted amendment to the certificate of incorporation.

3.3 *ELECTION AND TERM OF OFFICE OF DIRECTORS.* Except as provided in Section 3.4 of these bylaws, directors shall be elected at each annual meeting of stockholders to hold office as provided in Section 3.2 of these bylaws. Each director, including a director elected or appointed to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified. The board of directors shall select from among its members, by majority vote of the full number of authorized directors, one director who shall serve as chairman of the board so long as such chairman remains a member of the board but in all events subject to dismissal or replacement as chairman at any time by the board, by majority vote of the full number of authorized directors

3.4 **RESIGNATION AND VACANCIES.** Any director may resign effective on giving written notice to the chairman of the board, the president, the secretary or the board of directors, unless the notice specifies a later time for that resignation to become effective. If the resignation of a director is effective at a future time, the board of directors may elect a successor to take office when the resignation becomes effective. Unless otherwise provided in the certificate of incorporation or these bylaws, vacancies and newly created directorships resulting from any increase in the authorized number of

directors may be filled by a majority of the remaining directors, even if less than a quorum, or by a sole remaining director; however, a vacancy created by the removal of a director by the vote of the stockholders or by court order may be filled only by the affirmative vote of a majority of the shares represented and voting at a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute a majority of the required quorum).

**3.5    REMOVAL OF DIRECTORS.** Unless otherwise restricted by statute, by the certificate of incorporation or by these bylaws, any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors.

**3.6    PLACE OF MEETINGS; MEETINGS BY TELEPHONE.** Regular meetings of the board of directors may be held at any place within or outside the State of Delaware that has been designated from time to time by resolution of the board or in the absence of such a designation, at the principal executive office of the corporation. Special meetings of the board may be held at any place within or outside the State of Delaware that has been designated in the notice of the meeting or, if not stated in or if there is no notice, at the principal executive office of the corporation. Any meeting, regular or special, may be held by conference telephone or similar communication equipment, so long as all directors participating can hear one another; and all such participating directors shall be deemed to be present in person at the meeting.

**3.7    REGULAR MEETINGS.** Regular meetings of the board of directors may be held without notice at such time as shall from time to time be determined by the board of directors. If any regular meeting day shall fall on a legal holiday, then the meeting shall be held at the same time and place on the next succeeding full business day.

**3.8    SPECIAL MEETINGS; NOTICE.** Special meetings of the board of directors for any purpose or purposes may be called at any time by the chairman of the board, the president, any vice president, the secretary or any two directors. Notice of the time and place of special meetings shall be delivered personally or by telephone to each director or sent by first-class mail, telecopy or telegram, charges prepaid, addressed to each director at that director's address as it is shown on the records of the corporation. If the notice is mailed, it shall be deposited in the United States mail at least 10 days before the time of the holding of the meeting. If the notice is delivered personally or by telephone, telecopy or telegram, it shall be delivered personally or by telephone or to the telegraph company at least 48 hours before the time of the holding of the meeting. Any oral notice given personally or by telephone may be communicated either to the director or to a person at the office of the director who the person giving the notice has reason to believe will promptly communicate it to the director. The notice need not specify the purpose of the meeting.

6

**3.9   QUORUM.** A majority of the authorized number of directors shall constitute a quorum for the transaction of business, except to adjourn as provided in Section 3.11 of these bylaws. Every act or decision done or made by a majority of the directors present at a duly held meeting at which a quorum is present shall be regarded as the act of the board of directors, subject to the provisions of the certificate of incorporation and applicable law. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the quorum for that meeting.

**3.10   WAIVER OF NOTICE.** Notice of a meeting need not be given to any director (i) who signs a waiver of notice, whether before or after the meeting, or (ii) who attends the meeting other than for the express purposed of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. All such waivers shall be filed with the corporate records or made part of the minutes of the meeting. A waiver of notice need not specify the purpose of any regular or special meeting of the board of directors.

**3.11   ADJOURNMENT.** A majority of the directors present, whether or not constituting a quorum, may adjourn any meeting of the board to another time and place.

**3.12   NOTICE OF ADJOURNMENT.** Notice of the time and place of holding an adjourned meeting of the board need not be given unless the meeting is adjourned for more than 24 hours. If the meeting is adjourned for more than 24 hours, then notice of the time and place of the adjourned meeting shall be given before the adjourned meeting takes place, in the manner specified in Section 3.8 of these bylaws, to the directors who were not present at the time of the adjournment.

**3.13   BOARD ACTION BY WRITTEN CONSENT WITHOUT A MEETING.** Any action required or permitted to be taken by the board of directors may be taken without a meeting, provided that all members of the board consent in writing to that action. Such action by unanimous written consent shall have the same force and effect as a unanimous vote of the board of directors. Such written consent and any counterparts thereof shall be filed with the minutes of the proceedings of the board of directors.

**3.14   FEES AND COMPENSATION OF DIRECTORS.** Directors and members of committees may receive such compensation, if any, for their services and such reimbursement of expenses as may be fixed or determined by resolution of the board of directors. This Section 3.15 shall not be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, employee or otherwise and receiving compensation for those services.

**3.15   APPROVAL OF LOANS TO OFFICERS.** The corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the *corporation or any of its subsidiaries, including any officer or employee who is a*

7

director of the corporation or any of its subsidiaries, whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation. The loan, guaranty or other assistance may be with or without interest and may be unsecured, or secured in such manner as the board of directors shall approve, including, without limitation, a pledge of shares of stock of the corporation. Nothing contained in this section shall be deemed to deny, limit or restrict the powers of guaranty or warranty of the corporation at common law or under any statute.

**3.16  SOLE DIRECTOR.** In the event only one director is required by these bylaws or the certificate of incorporation, then any reference herein to notices, waivers, consents, meetings or other actions by a majority or quorum of the directors shall be deemed to refer to such action by such sole director who shall have all the rights and duties and shall be entitled to exercise all of the powers and shall assume all the responsibilities otherwise given to the board of directors.

## ARTICLE IV COMMITTEES

**4.1  COMMITTEES OF DIRECTORS.** The board of directors may, by resolution adopted by a majority of the authorized number of directors, designate one or more committees, each consisting of two or more directors, to serve at the pleasure of the board. The board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. The appointment of members or alternate members of a committee requires the vote of a majority of the authorized number of directors. Any committee, to the extent provided in the resolution of the board, shall have and may exercise all the powers and authority of the board but no such committee shall have the power or authority to (i) amend the certificate of incorporation, (ii) adopt an agreement of merger or consolidation under Sections 251 or 252 of the General Corporation Law of Delaware, (iii) recommend to the stockholders the sale, lease or exchange of all or substantially all of the corporation's property and assets, (iv) recommend to the stockholders a dissolution of the corporation or a revocation of a dissolution, (v) amend the bylaws of the corporation; or (vi) declare a dividend, authorize the issuance of stock, or adopt a certificate of ownership and merger pursuant to Section 253 of the General Corporation Law of Delaware.

**4.2  RULES OF COMMITTEES.** The board of directors may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws. In the absence of but so long as not inconsistent with such rules or these bylaws, each committee may prescribe its own rules for calling and holding meetings and its method of procedure.

**4.3  COMMITTEE MINUTES.** Each committee shall keep regular minutes of its meetings and report the same to the board of directors when required.

## ARTICLE V: OFFICERS

8

22/07 03  DI  17:50 FAX                                                   ☑016

**5.1   OFFICERS.** The corporate officers of the corporation shall be each of a (i) president and chief executive officer, (ii) vice president and chief operating officer, and (iii) treasurer and chief financial officer, and (iv) secretary. Any number of offices may be held by the same person. The corporation may also have, at the discretion of the board of directors, additional vice presidents (however denominated), one or more assistant secretaries and assistant treasurers together with such other officers as may be appointed in accordance with the provisions of Section 5.3 of these bylaws. In addition to the corporate officers of the corporation described above, there may also be such administrative officers of the corporation as may be designated and appointed from time to time by the president of the corporation in accordance with the provisions of Section 5.12 of these bylaws.

**5.2   ELECTION OF OFFICERS.** The corporate officers of the corporation, except such officers as may be appointed in accordance with the provisions of Section 5.3 or Section 5.5 of these bylaws, shall be chosen by the board of directors, subject to the rights, if any, of an officer under any contract of employment, and shall hold their respective offices for such terms as the board of directors may from time to time determine.

**5.3   SUBORDINATE OFFICERS.** The board of directors may appoint, or may empower the president to appoint, such other corporate officers as the business of the corporation may require, each of whom shall hold office for such period, have such power and authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine. The president may from time to time designate and appoint administrative officers of the corporation in accordance with the provisions of Section 5.12 of these bylaws.

**5.4   REMOVAL AND RESIGNATION OF OFFICERS.** Subject to the rights, if any, of a corporate officer under any contract of employment, any corporate officer may be removed, either with or without cause, by the board of directors at any regular or special meeting of the board or, except in case of a corporate officer chosen by the board of directors, by any corporate officer upon whom such power of removal may be conferred by the board of directors. Any corporate officer may resign at any time by giving written notice to the corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the corporation under any contract to which the corporate officer is a party. Any administrative officer designated and appointed by the president may be removed, either with or without cause, at any time by the president. Any administrative officer may resign at any time by giving written notice to the president or to the secretary of the corporation.

9

**5.5   VACANCIES.** A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these bylaws for regular appointments to that office.

**5.6   AUTHORITY OF CORPORATE OFFICERS.** The president shall be the chief executive officer of the corporation and, subject to the control of the board of directors, shall have general responsibility for and supervision, direction and control of the business and all other corporate officers of the corporation. He or she shall preside at all meetings of the stockholders and, in the absence or nonexistence of a chairman of the board, at all meetings of the board of directors. He or she shall have the general powers and duties of management usually vested in the office of president of a corporation, and shall have such other powers and perform such other duties as may be prescribed by the board of directors or these bylaws. All other corporate officers shall have such authority and responsibility as is customarily incident to their respective offices, except as may be otherwise or in addition provided periodically by the board of directors or the president.

### ARTICLE VI: INDEMNIFICATION

**6.1   INDEMNIFICATION OF DIRECTORS AND OFFICERS.** The corporation shall, to the maximum extent and in the manner permitted by the General Corporation Law of Delaware, as now exists or may hereafter be amended, indemnify any person against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with any threatened, pending or completed action, suit, or proceeding in which such person was or is a party or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the corporation. For purposes of this Section 6.1, a "director" or "officer" of the corporation shall mean any person (i) who is or was a director or officer of the corporation, (ii) who is or was serving at the request of the corporation as a director or officer of another corporation or other enterprise, or (iii) who was a director or officer of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation. The corporation shall be required to indemnify a director or officer in connection with an action, suit, or proceeding (or part thereof) initiated by such director or officer only if the initiation of such action, suit, or proceeding (or part thereof) by the director or officer was authorized by the board of directors of the corporation. The rights conferred on any person by this Article shall not be exclusive of any other rights which such person may have or hereafter acquire under any statute, provision of the corporation's Certificate of Incorporation, these bylaws, agreement, vote of the stockholders or disinterested directors or otherwise. Any repeal or modification of the foregoing provisions of this Article shall not adversely affect any right or protection hereunder of any person in respect of any act or omission occurring prior to the time of such repeal or modification.

**6.2   INDEMNIFICATION OF OTHERS.** The corporation shall have the power, to the maximum extent and in the manner permitted by the General Corporation Law of Delaware as the same now exists or may hereafter be amended, to indemnify any person

10

(other than directors and officers) against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with any threatened, pending or completed action, suit, or proceeding, in which such person was or is a party or is threatened to be made a party by reason of the fact that such person is or was an employee or agent of the corporation. For purposes of this Section 6.2, an "employee" or "agent" of the corporation (other than a director or officer) shall mean any person (i) who is or was an employee or agent of the corporation, (ii) who is or was serving at the request of the corporation as an employee or agent of another corporation or other enterprise, or (iii) who was an employee or agent of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

6.3    INSURANCE. The corporation may maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the corporation would have the power to indemnify him or her against such liability under the provisions of the General Corporation Law of Delaware.

## ARTICLE VII: RECORDS AND REPORTS

7.1    MAINTENANCE AND INSPECTION OF RECORDS. The corporation shall, either at its principal executive office or at such place or places as designated by the board of directors, keep a record of its stockholders listing their names and addresses and the number and class of shares held by each stockholder, a copy of these bylaws as amended to date, accounting books and other records of its business and properties. Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent is the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent to so act on behalf of the stockholder. The demand under oath shall be directed to the corporation at its registered office in Delaware or at its principal place of business.

7.2    INSPECTION BY DIRECTORS. Any director shall have the right to examine and copy the corporation's stock ledger, a list of its stockholders and its other books and records for a purpose reasonably related to his or her position as a director.

7.3    ANNUAL STATEMENT TO STOCKHOLDERS. The board of directors shall present at each annual meeting, and at any special meeting of the stockholders when

11

called for by vote of the stockholders, a full and clear statement of the business and condition of the corporation.

**7.4  REPRESENTATION OF SHARES OF OTHER CORPORATIONS.** The chairman of the board, if any, the president, any vice president, the chief financial officer, the secretary or any assistant secretary of this corporation, or any other person authorized by the board of directors or the president or a vice president, is authorized to vote, represent and exercise on behalf of this corporation all rights incident to any and all shares of the stock of any other corporation or corporations standing in the name of this corporation. The authority herein granted may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by such person having the authority.

**7.5  CERTIFICATION AND INSPECTION OF BYLAWS.** The original or a copy of these bylaws, as amended to date, certified by the secretary, shall be kept at the corporation's principal executive office and shall be open to inspection by the stockholders of the corporation, at all reasonable times during office hours.

### ARTICLE VIII: GENERAL MATTERS

**8.1  RECORD DATE FOR PURPOSES OTHER THAN NOTICE AND VOTING.** For purposes of determining the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the board of directors may fix, in advance, a record date, which shall not precede the date upon which the resolution fixing the record date is adopted and which shall not be more than 60 days before any such action. In that case, only stockholders of record at the close of business on the date so fixed are entitled to receive the dividend, distribution or allotment of rights, or to exercise such rights, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date so fixed, except as otherwise provided by law. If the board of directors does not so fix a record date, then the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the board of directors adopts the applicable resolution.

**8.2  AUTHORIZED SIGNATORIES.** From time to time, the board of directors shall determine by resolution which person or persons may sign all checks or other evidences of indebtedness of the corporation or enter into any contract or execute any instrument in the name of and on behalf of the corporation. Only the persons so authorized shall sign or endorse those instruments. Unless so authorized or ratified by the board of directors, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

22/07 03 DI 17:31 FAX    Ⓩ020

**8.3   STOCK CERTIFICATES. PARTLY PAID SHARES.** The shares of the corporation shall be represented by certificates, provided that the board of directors of the corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the corporation. Notwithstanding the adoption of such a resolution by the board of directors, every holder of stock represented by certificates and, upon request, every holder of uncertificated shares, shall be entitled to have a certificate signed by, or in the name of the corporation by the president or vice-president, and by the treasurer or an assistant treasurer, or the secretary or an assistant secretary, representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he or she were such officer, transfer agent or registrar at the date of issue.

**8.4   TRANSFER.** Upon surrender to the secretary or transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books.

**8.5   PARTLY PAID SHARES.** The corporation may issue the whole or any part of its shares as partly paid and subject to call for the remainder of the consideration to be paid therefor. Upon the face or back of each stock certificate issued to represent any such partly paid shares, or upon the books and records of the corporation in the case of uncertificated partly paid shares, the total amount of the consideration to be paid therefor and the amount paid thereon shall be stated. Upon the declaration of any dividend on fully paid shares, the corporation shall declare a dividend upon partly paid shares of the same class, but only upon the basis of the percentage of the consideration actually paid thereon.

**8.6   SPECIAL DESIGNATION ON CERTIFICATES.** If the corporation is authorized to issue more than one class of stock or more than one series of any class, then the powers, the designations, the preferences and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate that the corporation shall issue to represent such class or series of stock; provided, however, that, except as otherwise provided in Section 202 of the General Corporation Law of Delaware, in lieu of the foregoing requirements there may be set forth on the face or back of the certificate that the corporation shall issue to represent such class or series of stock a statement that the corporation will furnish without charge to each stockholder who so requests the powers, the designations, the preferences and the relative, participating, optional or

13

other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

**8.7  LOST CERTIFICATES.** Except as provided in this Section 8.7, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the corporation and canceled at the same time. The board of directors may, in case any share certificate or certificate for any other security is lost, stolen or destroyed, authorize the issuance of replacement certificates on such terms and conditions as the board may require; the board may require indemnification of the corporation secured by a bond or other adequate security sufficient to protect the corporation against any claim that may be made against it, including any expense or. liability, on account of the alleged loss, theft or destruction of the certificate or the issuance of the replacement certificate.

**8.8  TRANSFER AGENTS AND REGISTRARS.** The board of directors may appoint one or more transfer agents or transfer clerks, and one or more registrars, each of which shall be an incorporated bank or trust company — either domestic or foreign, who shall be appointed at such times and places as the requirements of the corporation may necessitate and the board of directors may designate.

**8.9  CONSTRUCTION; DEFINITIONS.** Unless the context requires otherwise, the general provisions, rules of construction and definitions in the General Corporation Law of Delaware shall govern the construction of these bylaws. Without limiting the generality of this provision, as used in these bylaws, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both an entity and a natural person.

## ARTICLE IX: AMENDMENTS

The original or other bylaws of the corporation may be adopted, amended or repealed by the stockholders entitled to vote or by the board of directors of the corporation. The fact that such power has been so conferred upon the directors shall not divest the stockholders of the power, nor limit their power to adopt, amend or repeal bylaws. Whenever an amendment or new bylaw is adopted, it shall be copied in the book of bylaws with the original bylaws, in the appropriate place. If any bylaw is repealed, the fact of repeal with the date of the meeting at which the repeal was enacted or the filing of the operative written consent(s) shall be stated in said book.

EXHIBIT C

## EMPLOYMENT AGREEMENT

Entered into as of January 1, 2000 ("Effective Date") between **PETER KANZLSPERGER**, residing at Armin-Knab-Str. 13, 94474 Vilshofen, Germany ("**Employee**"), and **NAWA USA, INC.**, a company registered in Delaware and maintaining its principal office at 222 Munson Road, Wolcott, Connecticut 06716 ("**Company**").

### W I T N E S S E T H

**WHEREAS:** NAWA is engaged in the development, manufacture and sale of pharmaceutical formulations and drugs for wound healing together with other pharmaceutical and/or cosmetic products for the sports healthcare market ("**Company's Business**"); and

**WHEREAS** The Company desires to employ Employee as its Vice President and Chief Operating Officer and Employee wishes to be so employed.

**NOW, THEREFORE,** in consideration of the premises and mutual agreements hereinafter contained, the parties hereto agree as follows:

1. **EMPLOYMENT**

   With effect from the Effective Date, the Company employs Employee and Employee accepts employment with the Company upon the terms and conditions set forth herein.

2. **DUTIES**

   2.1. The Company hereby engages Employee to serve as Vice President and Chief Operating Officer.

   2.2. Employee shall devote his full business time and attention to the Company's Business (including the various subsidiaries of the Company) and shall perform his duties diligently and promptly for the benefit of the Company. During his engagement hereunder, Employee shall not undertake or accept any other paid or unpaid employment or occupation or engage in or be associated with, directly or indirectly any other businesses, duties or pursuits except for de minimis non-commercial or non-business activities.

   2.3. Employee shall report regularly and at least once each month to the Board of Directors of the Company or as otherwise requested by the Board.

3. **TERM**

   3.1. Employee's employment under this Agreement shall commence on the Effective Date and shall end on the earliest of: (i) the death or disability (as defined herein) of Employee or termination of employment by the Company with cause (as defined herein); or (ii) three (3) years from the date of this

- 2 -

Agreement ("**Initial Term**"). In the event this Agreement continues until the expiration of the Initial Term, the term shall automatically be extended for additional 12 month periods ("**Extended Term**") unless either party gives the other notice of its intent to terminate this Agreement at least ninety (90) days prior to the expiration of the Initial Term or any Extended Term.

3.2.  For the purpose of this Agreement, "**disability**" shall mean any physical or mental illness or injury as a result of which Employee remains absent from work for a period of six successive months in any 18 month period. Disability shall occur upon the end of such six month period.

3.3.  For the purpose of this Agreement, "**cause**" shall exist if Employee (i) breaches any of the material terms or conditions hereof including, without limitation, the terms of paragraphs 10 and 11; (ii) engages in willful misconduct or acts in bad faith with respect to the Company in connection with and related to the employment hereunder; (iii) is convicted of a felony or is held liable by a court of competent jurisdiction for fraud against the Company; or (iv) fails to comply with the instructions of the Company's Board of Directors given in good faith, provided that, with respect to clauses (i) and (iv), if Employee has cured any such condition (that is reasonably susceptible to cure) within 30 business days of the advance notice (as defined herein) then "cause" shall be deemed not to exist. For purposes of this paragraph 3, "advance notice" shall constitute a written notice delivered to Employee that sets forth with particularly the facts and circumstances relied on by the Company as the basis for cause.

3.4.  During the period following notice of termination by any party for any reason, the Employee shall cooperate with the Company and use his best efforts to assist the integration into the Company organization of the person or persons who will assume Employee's responsibilities.

4.  **COMPENSATION**

4.1.  During the term hereof, and subject to the performance of the services required to be performed hereunder by Employee, the Company shall pay to Employee for all services rendered by Employee under this Agreement a salary, payable not less often than monthly and in accordance with the Company's normal and reasonable payroll practices, in a monthly gross amount of $6,500 exclusive of amounts payable by the Company for the social benefits set forth in paragraph 4.2 ("**Gross Salary**"). The Company shall annually consider increasing the Employee's Gross Salary, pursuant to its normal practices.

4.2  The Company shall secure and maintain for the benefit of Employee as is customary of a position of comparable rank in a company of comparable size based in Germany, subject to such employee contributions as are customary.

5.  **EXPENSES**

Employee is authorized to incur reasonable expenses for promoting the Business of the Company, including expenses for entertainment, travel, telephone, lodging and

Agreement ("**Initial Term**"). In the event this Agreement continues until the expiration of the Initial Term, the term shall automatically be extended for additional 12 month periods ("**Extended Term**") unless either party gives the other notice of its intent to terminate this Agreement at least ninety (90) days prior to the expiration of the Initial Term or any Extended Term.

3.2.   For the purpose of this Agreement, "**disability**" shall mean any physical or mental illness or injury as a result of which Employee remains absent from work for a period of six successive months in any 18 month period. Disability shall occur upon the end of such six month period.

3.3.   For the purpose of this Agreement, "**cause**" shall exist if Employee (i) breaches any of the material terms or conditions hereof including, without limitation, the terms of paragraphs 10 and 11; (ii) engages in willful misconduct or acts in bad faith with respect to the Company in connection with and related to the employment hereunder; (iii) is convicted of a felony or is held liable by a court of competent jurisdiction for fraud against the Company; or (iv) fails to comply with the instructions of the Company's Board of Directors given in good faith, provided that, with respect to clauses (i) and (iv), if Employee has cured any such condition (that is reasonably susceptible to cure) within 30 business days of the advance notice (as defined herein) then "cause" shall be deemed not to exist. For purposes of this paragraph 3, "advance notice" shall constitute a written notice delivered to Employee that sets forth with particularly the facts and circumstances relied on by the Company as the basis for cause.

3.4.   During the period following notice of termination by any party for any reason, the Employee shall cooperate with the Company and use his best efforts to assist the integration into the Company organization of the person or persons who will assume Employee's responsibilities.

4.   **COMPENSATION**

4.1.   During the term hereof, and subject to the performance of the services required to be performed hereunder by Employee, the Company shall pay to Employee for all services rendered by Employee under this Agreement a salary, payable not less often than monthly and in accordance with the Company's normal and reasonable payroll practices, in a monthly gross amount of $6,500 exclusive of amounts payable by the Company for the social benefits set forth in paragraph 4.2 ("**Gross Salary**"). The Company shall annually consider increasing the Employee's Gross Salary, pursuant to its normal practices.

4.2   The Company shall secure and maintain for the benefit of Employee as is customary of a position of comparable rank in a company of comparable size based in Germany, subject to such employee contributions as are customary.

5.   **EXPENSES**

Employee is authorized to incur reasonable expenses for promoting the Business of the Company, including expenses for entertainment, travel, telephone, lodging and

- 3 -

similar items commensurate with his status with the Company. The Company will reimburse Employee promptly for all such expenses upon presentation by Employee, from time to time, of an itemized account of expenditures. Per diem allowances and petty cash advances shall be in accordance with the Company's standard policy as agreed to by the Board of Directors of the Company from time to time.

6.    **VACATION**

Employee shall be entitled to 25 working days of paid vacation during each year that this Agreement is in effect. Vacation time may be accumulated for no more than two years, after which the Company shall pay Employee for any unused accumulated vacation remaining.

7.    **TERMINATION OF EMPLOYMENT**

   7.1.   In the event this Agreement is terminated during the Initial Term or any Extended Term, as defined in Section 3.1 above, in addition to any right to notice described herein, the Employee shall have the right to receive three months prior notice during which time Employee shall have the right to receive the Gross Salary and the benefits set forth in Section 4.2.

   7.2.   Employee's right to notice pursuant to this section shall apply only in the event this Agreement is terminated by the Company without cause, including exercise by the Company of notice of termination for any Extended Term. For purposes of this section, termination by Employee shall be deemed to be a termination by the Company in the event Employee terminates this Agreement due to the change in duties specified in section 2.1.

8.    **SECRECY AND NONDISCLOSURE**

The Employee shall treat as secret and confidential all of the processes, methods, formulas, procedures, techniques, and other information which are not of public knowledge or record pertaining to the Company's Business (existing, potential and future), including without limitation, all business information relating to customers and suppliers and products of which the Employee becomes aware during and as a result of his employment or association with the Company. Employee shall not disclose, use, publish, or in any other manner reveal, directly or indirectly, at any time during or after the term of this Agreement, any such processes, methods, formulas, procedures, techniques, and other information pertaining to the Company's existing or future Business or products.

9.    **NON-COMPETITION**

   9.1.   Employee agrees that during the term of this Agreement and any extensions hereof and for a period of two (2) years after he ceases to be employed by the Company he will not, directly or indirectly, for his own account or as an employee, officer, director, partner, joint venturer, shareholder, investor, consultant or otherwise (except as an investor in a corporation whose stock is publicly traded and in which Employee holds less than 5% of the outstanding

- 4 -

shares) interest himself in or engage in any business or enterprise that directly or indirectly competes with the Business of the Company, that exists now or in the future during the term of this Agreement or is proposed in writing by the Company, prior to the time of termination; provided that any such written proposal is provided to Employee within 30 days of the date of termination.

9.2.   Employee agrees that during a period of one year from termination of this Agreement or any extension hereof he shall not employ directly or indirectly any individual then employed by the Company.

9.3.   Employee acknowledges that the restricted period of time specified under paragraph 9.1 hereof are reasonable, in view of the nature of the business in which the Company is engaged and Employee's knowledge of the Company's Business and products.

9.4.   Notwithstanding anything contained in paragraph 9.2 and 9.3 to the contrary, if the period of time specified under paragraph 9.1 hereof should be determined to be unreasonable in any judicial proceeding, then the period of time shall be reduced so that this Agreement may be enforced in such area and during such period of time as shall be determined to be reasonable by such judicial proceeding.

## 10.   DEVELOPMENT RIGHTS

Employee agrees and declares that all proprietary information including but not limited to trade secrets and know-how, patents and other rights in connection therewith developed by or with the contribution of Employee's efforts during his employment by the Company and relating to the Company's Business shall be the sole property of the Company.  Employee shall execute all documents necessary to assign any patents to the Company and otherwise transfer such proprietary rights to the Company, provided, however, that Employee shall be paid any amounts required under applicable Patent Law.

## 11.   EMPLOYEE REPRESENTATIONS

The Employee represents and warrants to the Company that the execution and delivery of this Agreement and the fulfillment of the terms hereof (i) will not constitute a default under or breach of any agreement or other instrument to which he is a party or by which he is bound, including without limitation, any confidentiality or non-competition agreement, (ii) do not require the consent of any person or entity, and (iii) shall not utilize during the term of his employment any proprietary information of any third party, including prior employers of the Employee.

## 12.   BENEFIT

Except as otherwise herein expressly provided, this Agreement shall inure to the benefit of and be binding upon the Company, its successors and assigns, including, without limitation, any subsidiary or affiliated entity and shall inure to the benefit of and be binding upon Employee, his heirs, executors, administrators and legal

representatives. Notwithstanding the foregoing, the obligations of Employee hereunder shall not be assignable or delegable.

13. **ENTIRE AGREEMENT**

This Agreement constitutes the entire understanding and agreement between the parties hereto, supersedes any and all prior discussions, agreements and correspondence with regard to the subject matter hereof, and may not be amended, modified or supplemented in any respect, except by a subsequent writing executed by both parties hereto.

14. **NOTICES**

All notices, requests and other communications to any party hereunder shall be given or made in writing and telecopies, mailed (by registered or certified mail) or delivered by hand to the respective party at the address set forth in the caption of this Agreement or to such other address (or telecopier number) as such party may hereafter specify for the purpose of notice to the other party hereto. Each such notice, request or other communication shall be effective (i) if given by telecopier, when such telecopy is transmitted to the telecopier number specified herein and the appropriate answerback is received or (ii) if given by any other means, when delivered at the address specified herein.

15. **APPLICABLE LAW**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to principles of conflicts of law and the courts of New York, state or federal, shall have exclusive jurisdiction over the parties hereto and subject matter hereof.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first appearing above.


**NAWA USA, INC.**


By: _____          _____
                                          **PETER KANZLSPERGER**

Name:    Thomas Riesinger

Title:    President and
          Chief Executive Officer