UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAWA USA, INC.
Plaintiff
v.                                    Case No. 06CV01150 (RMC)

DR. HANS-GEORG BOTTLER, *et al.*
Defendants

# Reply to the civil-law subpoena of the U.S. District Court of the District of Columbia

dated June 23, 2006
Case No.: 1: 06CV01150#
Judge: Rosemary M. Collyer

**NAWA USA, Inc.**
Ostendstr. 110, 90482 Nuremberg, Germany

                                                            (Plaintiff)

versus

**Dr. Hans-Georg Bottler**,
Krückauweg 3
25335 Elmshorn, Germany

**Ferdy Egli**
Freudenbergweg 5
9240 Uzwil, Switzerland

**Bernd Stern**
Mülhamer Strasse 20
94486 Osterhofen, Germany

**Peter Kanzlsperger**
Armin- Knab- Strasse 13
94474 Vilshofen, Germany

**Nawa Vertriebs-GmbH**
Ziegelhöhe 8
92361 Berngau, Germany

**Alexander Grüter**
Prüfeninger Straße 35

**RECEIVED**

APR **3 0** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

93049 Regensburg, Germany

(Defendants)

## Jurisdiction of the Court and Venue

On page 4, paragraph 3, **the Plaintiff asserts** the jurisdiction of the Court based on Law 28 U.S.C, Section 1322(a), because the Plaintiff, NAWA USA, Inc., is a citizen of the State of Delaware as well as the District of Columbia, and the Defendants are all citizens of other countries. The amount totals more than $100,000, not including interest and expenses.

On page 4, paragraph 4, **the Plaintiff asserts** the Court has personal jurisdiction with regard to the parties in these legal proceedings because the complaint is based on activities that concern a company whose main place of business is located in the District of Columbia. Accordingly, on page 4, paragraph 5 the Plaintiff states that pursuant to 28 U.S.C. 1391, the jurisdictional venue lies within the District of Columbia because the Plaintiff has its headquarters within the District of Columbia.

### Response:

The Court's material, local and international jurisdiction is, as before, rejected. According to the Plaintiff, the venue is based solely on the Plaintiff's business registration in Delaware. The Plaintiff's main place of business and the offices of its executives are not located in Washington; they are at NAWA Heilmittel GmbH, whose place of business is Ostendstrasse 100, 90482 Nuremberg. All transactions are conducted from there.

1. According to the statement the Plaintiff's CEO, Thomas Riesinger (TR) (Exhibit B1, page 5), gave stock on August 3, 2004 to the Nuremberg-Fürth public prosecutor's office in the pending criminal proceedings against the Plaintiff for embezzlement and fraud in connection with the placement of NAWA USA Inc., he admitted that the company's registered office in the State of Delaware was only an office service. Any mail received is forwarded to NAWA Heilmittel GmbH, whose place of business is Ostendstrasse 100, 90482 Nuremberg. According to TR, there are no employees of the U.S. company. In addition, the Plaintiff's letterheads for NAWA USA Inc. only list the German address of NAWA Heilmittel GmbH in Nuremberg and not the address in the United States (Exhibit B21).

2. The investigators of the German public prosecutor's office confirmed on March 9, 2004 that NAWA USA, Inc. was only a "letterbox company" that has changed its address three times since it was founded in December 2001 (Exhibit B2). This knowledge is based on findings of the U.S. Securities and Exchange Commission (SEC) subsequent to the corresponding inquiry of the German investigatory authorities. An investigator from the Frankfurt/Main police headquarters also confirmed this (Exhibit B7, page 4). In a transcript dated August 19, 2004 (Exhibit 3, page 1), the public prosecutor's office confirmed these findings, stating:

    > "NAWA USA Inc. exists, even if in Germany instead of the United States. It is extremely difficult to separate NAWA USA Inc. from NAWA Heilmittel GmbH and, according to the accused, no such separation was ever carried out correctly."

3. The witness statements the members of the Plaintiff's board of directors gave to the investigating police with regard to NAWA USA, Inc. also confirm that

the Plaintiff's main place of business [is] in the "business tower at Ostendstrasse 100, 90482 Nuremberg, Germany" (Exhibit B4, page 1) (Exhibit B5, page 2) (Exhibit B6, page 1).

4. The Plaintiff's ownership structure consists of shareholders exclusively from Germany or Switzerland. There is not a single known shareholder that is a U.S. citizen. The public prosecutor's office confirmed this by means of the list of shareholders (Exhibit B8). To acquire shares of NAWA USA, Inc., investors transferred funds directly to the Plaintiff's German account (Exhibit B7, page 5) and not to the Plaintiff's account in the United States.

5. Likewise, the meetings of the board of directors always took place in Germany, for example on November 23, 2002, on March 25, 2003, on June 21, 2003 and on July 13, 2003 (Appendices B9, B10 and B11). The minutes [of the meetings] are all in German because all the participants were of German-speaking origin.

6. The Plaintiff itself argues that the Defendants were removed as its statutory organs. In so doing the Plaintiff jeopardizes its own justification for the Court's jurisdiction, the basis of which is that it involves a complaint between the company and its statutory organs.

7. The separation of NAWA USA Inc., an American company, and NAWA Heilmittel GmbH, a company registered in Germany, which even the German public prosecutor's office could not comprehend, also argues against a lawsuit in the United States of America. The Plaintiff, NAWA USA Inc., is only a licensee of NAWA Heilmittel GmbH. The accusations of fraud and deception, theft and embezzlement, and unfair competition with regard to NAWA products do not pertain to the Plaintiff, NAWA USA Inc. The Plaintiff does not own the patents or the products. The Plaintiff pays a monthly licensing fee of EUR 12,500 to NAWA Heilmittel GmbH (Exhibit B12). The Defendant Nawa Vertriebs-GmbH has a license agreement dated January 9, 2001 (Exhibit B13) with NAWA Heilmittel GmbH and not with the Plaintiff, NAWA USA Inc.

8. Because of the ongoing criminal proceedings in Germany against the Plaintiff, NAWA USA Inc., and the unclear separation between the Plaintiff, NAWA USA Inc., and the German company NAWA Heilmittel GmbH, the appearance is created that the U.S. District Court of the District of Columbia wants to expand its jurisdiction so as to effect a court decision that would be unenforceable based on the facts known in Germany. For the reasons indicated above, the jurisdiction of the District of Columbia court is in doubt. The reproof of "*forum non conveniens*" is explicitly raised.

9. The public prosecutor's office also found a clear inability to distinguish the companies NAWA USA Inc. and NAWA Heilmittel GmbH in the questionable payments and transfers of costs from NAWA Heilmittel GmbH to NAWA USA Inc. (Exhibit B14).

10. The Defendants Bottler, Stern and Egli sued the Plaintiff in German courts for payment of outstanding fees for their work as directors. The complaints were brought before the Nuremberg municipal court under reference number 34 C 1097/04. The Plaintiff made settlements with the aforementioned defendants to the effect that the Plaintiff would pay the fees by the end of 2003. If the Plaintiff could have proved the board members accused in this instance had been dismissed, it would not have made this settlement (Exhibit B15). During these proceedings the Plaintiff never claimed the German court lacked

jurisdiction, which it would have had to do consistently, but it now claims that an American court has jurisdiction.

11. Even if the accusation of illegal acts were true, which it is not, these acts did not take place in the United States or in areas under its legal jurisdiction, so there is no legal basis for a venue in the United States.

## Parties

On page 5, paragraph 6, the Plaintiff claims that it is a company that was legally established under the laws of the State of Delaware. The Plaintiff, NAWA USA Inc., has its main place of business and the offices of its executives at the following address: 1875 I Street, NW, 5th floor, Washington, DC 20006. This is the address of an office service. None of the [company's] executives, which now consist only of the remaining CEO, Mr. Riesinger, and the CFO, Mr. Weber, maintain their residence or even their place of business there. They are registered in Germany at the address NAWA Heilmittel GmbH, Ostendstrasse 100, 90482 Nuremberg, and privately as Sylvia Weber, Kreilingstr. 17/3, 90408 Nuremberg and Thomas Riesinger, Kilianstraße 237, 90411 Nuremberg.

The Plaintiff supposedly has 4,274,075 shares of outstanding common stock. Under the corporate name NAWA, the Plaintiff is active in the research and development sector, and the manufacture, sales promotion and marketing of various medical devices, medications and cosmetics.

### Response:
Please see Nos. 1-11 above.

The number of outstanding shares is disputed. This is false. The Plaintiff has no register of shareholders that is suitable as evidence – which for a long time has been unproved and a subject of dispute between the board members and the Plaintiff – because it does not properly keep one.

On page 5, paragraphs 7-12, the Plaintiff claims the Defendant Dr. Hans-Georg Bottler was a member of the Plaintiff's board of directors until May 23, 2003. On May 23, 2003, pursuant to Section 228 of the Corporation Act of the State of Delaware and the Plaintiff's company bylaws, Dr. Hans-Georg Bottler was legally removed by the Plaintiff as a member of the board of directors by means of a shareholder resolution instead of a shareholder meeting.

### Response:
12. The termination of the members of the board of directors, Messrs. Bottler, Egli, Stern and Kanzlsperger, which the Plaintiff claims is legal, was uncontested until today. This is also disputed. The board member Defendants objected to their dismissal. In the subsequent legal actions the Plaintiff provided no verifiable evidence for this claim.

History: Until the questionable termination on May 23, 2003, the board of directors consisted of the following five members: Messrs. Bottler, Egli, Kanzlsperger, Riesinger and Stern. Board meetings took place at regular intervals, for example on April 26, 2002, September 16, 2002, October 12, 2002, November 23, 2002, February 21, 2003 and March 25, 2003. The

Plaintiff's terrible financial situation was also a topic at the meetings and various cost-reduction schemes were discussed (Appendices B16 and B17). The ongoing threat of the Plaintiff going bankrupt and the measures associated with this were a point of contention between the CEO, Thomas Riesinger, and the other members of the board. The minutes of the board meeting on March 25, 2003 (Exhibit B10) clearly show that the CEO pressured again and again, and he was aware that his job as company CEO was terminated by a majority vote of the members of the board (Exhibit B17). Following the board meeting, the general meeting took place in which the terrible financial situation was supposed to be described to the shareholders and the board of directors was to stand for reelection. The mood was seen as positive in this general meeting, which was full of discussion. The shareholders' trust in the directors present was confirmed by their reelection with a majority [vote] of 99.8% of the shareholders (Exhibit B18, page 11). The next board meeting was set for May 24, 2003, which the Plaintiff confirmed by e-mail on April 23, 2003, May 2, 2003 and May 16, 2003; i.e. only one week before the supposedly legally valid termination (Exhibit B20). The agenda items for this meeting contain fundamental changes to the corporate construct and the position of the CEO was up for discussion. On May 23, 2003, approximately 12 hours before the meeting, the directors, Messrs. Bottler, Egli, Kanzlsperger and Stern, received a faxed [announcement of] their termination by the CEO, which supposedly was legal by written consent (51% of the shareholders) and the majority of shareholders now wished to terminate the board of directors and accepted the CEO, Thomas Riesinger, as solely authorized to represent [the company]. In a shareholder letter dated June 6, 2003, the Plaintiff describes the reaction of the last general meeting as positive. In the same letter the Plaintiff informs the shareholders that the board of directors had been terminated and the number of members reduced to one (Exhibit B17, page 5). Mr. Riesinger did not present the written consent through which the termination was supposedly legal, even after requested to do so by the directors (Exhibit B19). During their investigations, the commissioners of the public prosecutor's office confirmed the questionable [nature of the] termination of the directors by Mr. Riesinger (Exhibit B3, page 1): "The managing directors have not been in agreement with one another since approximately April 2003. The Defendant Riesinger dismissed the board of directors with a majority of [voting] shares; this has yet to be verified …" A regular court in Germany also found the dismissal of the members of the board of directors to be illegal. In the lawsuit for payment of outstanding board fees, by the Defendant Dr. Hans-Georg Bottler, he was promised by way of the settlement and paid by the Plaintiff, NAWA USA Inc., compensation for his entire term in office, from May 23, 2003 until his voluntary resignation on December 31, 2003.

The Plaintiff also states on page 6, paragraph 10:

The Defendant Peter Kanzlsperger was also employed as the vice president and COO of the Plaintiff, NAWA USA Inc., until his dismissal on June 20, 2003. His duties as vice president and COO, and the prerequisites for his employment, were stipulated in a written employment contract on January 1,

2000. A copy of this employment contract is attached to this complaint as Exhibit III. The Defendant Peter Kanzlsperger is a relative of Thomas Riesinger, …..

## Response:

13. The Defendant Peter Kanzlsperger never signed the alleged employment contract that the Plaintiff cites as Exhibit III. The Defendant Peter Kanzlsperger therefore demands that a signed copy be presented. Like the dismissal of the board of directors, the dismissal of the Defendant Peter Kanzlsperger is an illegal and rather dubious action that can be traced back to the CEO, Thomas Riesinger (Exhibit B3, page 3). The complaint states there is a breach of the employment contract under common law. This is disputed. Because according to U.S. law no employment contract exists, no such alleged common law applies. This is foreign to German law. His work for the Plaintiff, NAWA USA Inc., included developing and expanding the Plaintiff's sales activities and developing contacts with manufacturers by means of [the company's] 80% subsidiary and co-defendant, Nawa Vertriebs-GmbH, which was responsible for selling the products of Nawa Heilmittel GmbH, for which the Plaintiff is a licensee. The German public prosecutor's office also confirmed this when it stated (Exhibit B3, page 3): "In the end, Defendant Riesinger solely represented NAWA USA Inc. Defendant Weber (CFO) was his right hand and worked only as instructed or ordered by him. Defendant Kanzlsperger was, until his dubious dismissal, responsible for expanding sales at the subsidiary Nawa Vertriebs-GmbH, which was necessary for the initial public offering."

14. The familial relationship the Plaintiff described does not correspond to the facts. Peter Kanzlsperger is not directly related to Thomas Riesinger.

15. The Defendant Peter Kanzlsperger protested his termination on June 20, 2003 (Exhibit B21) because at that time such a decision would have had to be approved by the board of directors, which, as No. 12 describes, Thomas Riesinger also wanted to dismiss under dubious prerequisites.

## Facts

On page 7, paragraphs 13 and 14 of the complaint, the Plaintiff claims that:

"On or about January 1, 2000, the Plaintiff, NAWA USA Inc., and the Defendant Peter Kanzlsperger signed an employment contract by means of which the Plaintiff, NAWA USA Inc., hired the Defendant Peter Kanzlsperger as the Plaintiff's vice president and COO."

The employment contract dated January 1, 2000 contains certain restrictions with regard to maintaining confidentiality and the use of NAWA´s proprietary information by the Defendant Peter Kanzlsperger….

**Response:**

Please see Nos. 13-16 above regarding the inaccuracy of this representation [of the facts].

On page 7, paragraph 15, the Plaintiff claims that:

> During the period from January 1, 2000 through May 23, 2003, 80% of the Defendant Nawa Vertriebs-GmbH was owned by the Plaintiff, NAWA USA Inc. The Defendant Nawa Vertriebs-GmbH was the manufacturing arm for the products of the Plaintiff, NAWA USA, Inc.

**Response:**

16. Nawa Vertriebs-GmbH is a commercial enterprise with numerous commercial articles for sports and physiotherapy; it has annual sales of EUR 2.2 million. Ointment sales account for only approximately 10% of total sales. The Defendant Nawa Vertriebs-GmbH was not the manufacturing arm for the Plaintiff, NAWA USA Inc. The Defendant Nawa Vertriebs-GmbH only organized manufacturing by awarding contracts to contract producers. Nawa Vertriebs GmbH hasn't sold any products under the NAWA name since 2003, nor any products that correspond to those of the Plaintiff or Nawa Heilmittel GmbH. The Plaintiff has to date offered no proof or presented anything concrete in this regard detailing how the Defendants violated the law or committed damaging acts in this case.

17. In his statement to the public prosecutor's office (Exhibit B1, pages 7 and 9), Thomas Riesinger confirmed that Peter Kanzlsperger was responsible for expanding sales.

18. The contribution [made by] NAWA products, in this case not only the products of the Plaintiff but [also those] of its 80%[-owned] subsidiary NAWA Heilmittel GmbH, which the Plaintiff describes as substantial, does not correspond to the facts.

On page 8, paragraph 16, the Plaintiff claims that:

> Sometime prior to May 23, 2003, the Defendants, Bottler *et al.*, made plans, schemed, conspired and made a deliberate and illegal plan, plot and conspiracy – or took part in such a plan, plot, malicious intrigue, evil intention and conspiracy – with the goal of squandering, dissipating and misusing funds, possessions, copyrighted information and assets of the Plaintiff, NAWA USA Inc., in order to make it possible for the Defendant Nawa Vertriebs-GmbH to use these funds, possessions, ..... and assets for their own enrichment.

**Response:**

19. The accusation of intrigue is unjustified. The Plaintiff has to date offered no proof or presented anything concrete in this regard detailing how the Defendants violated the law or committed damaging acts in this case. The

plan of action planned in the board meeting on May 24, 2003 (Exhibit B10l) had already been approved prior to as well as after the general meeting in March 2003 and had already been discussed in November 2002 (Exhibit B9). After the illegal termination by the CEO of the Plaintiff, NAWA USA Inc., that is described in No. 12 and which was not accepted by the directors, the directors recognized the risk for shareholders and approved calling another board meeting for June 21, 2003 in which decisions would be made that had already been considered and developed in the previous meeting. A quorum was stipulated in the regular board meeting on June 21, 2003 (Exhibit B11) because only one of the five directors, Thomas Riesinger, was absent despite being properly invited on time (Exhibit B22).

Basic facts on the relationship between the Plaintiff, NAWA USA Inc, and the Defendant Nawa Vertriebs- GmbH:

a. The Defendant Nawa Vetriebs-GmbH was founded by the Defendant Peter Kanzlsperger on October 1, 1999 and was registered as a proper company on December 13, 1999 at the AG Nuremberg in the commercial register under HRB 16775 with its registered office in Berngau. The capital stock totals EUR 25,000 and was acquired by the Defendant Peter Kanzlsperger, who was also appointed the sole managing director and exempt from the restrictions of § 181 BGB [*Bürgerliches Gesetzbuch*/German Civil Code] authorized to represent [the company]. At the time NAWA USA Inc. was founded, the Defendant Peter Kanzlsperger sold a share in the company totaling EUR 20,000, which corresponds to 80% of the capital stock of the Plaintiff, NAWA USA Inc. The subsidiaries Nawa Vertriebs-GmbH and NAWA Heilmittel GmbH were purchased to enable German shareholders to invest in a U.S. company through its German subsidiaries. In the share offering prospectus dated October 2000 (Exhibit B23), outstanding purchase-price payments by the subsidiary Nawa Vertriebs-GmbH were indicated in the expenditure plans. Accordingly, payments of USD 93,000 each were planned for the purchase of Nawa Vertriebs-GmbH in the third and fourth quarters and USD 108,900 was planned for payments in the second quarter of 2001. None of the payments to the Defendant Peter Kanzlsperger were made by the Plaintiff to acquire the 80% [share of the company]. On the other hand, payments were made to the silent shareholder Adolf Riesinger, Thomas Riesinger's father, to transfer an 80% share in NAWA Heilmittel GmbH. The purchase price for the partnership in which the silent partner takes a co-entrepreneurial role was recorded in the financial bookkeeping of the Plaintiff, NAWA USA INC., as the purchase price [for a] stake in NAWA Heilmittel GmbH. In addition, the silent partner was promised annual interest of 7%, which is unusual for a partnership in which the silent partner takes a co-entrepreneurial role. The Plaintiff, NAWA USA Inc., made the first partial payment of DEM 205,000 on December 20, 2000. On January 21, 2000, the Plaintiff, NAWA USA Inc., bought 80% of the shares of NAWA Heilmittel GmbH for a total of DEM 40,000. At this point it should be noted that the public prosecutor's office discovered in its investigations that NAWA Heilmittel GmbH was already overindebted at the time of the investment by the Plaintiff, NAWA USA Inc., and that the managing director Thomas Riesinger was obliged to declare bankruptcy. The auditor also advised him of his obligation (Exhibit B24).

b. Because of the imminent bankruptcy, which was confirmed again and again by the board of directors, a payment of the purchase price of the shares of NAWA USA Inc. to the subsidiary Nawa Vertriebs-GmbH was impossible and represented a risk to the shareholders' investments. The guarantee obligation of the Plaintiff, NAWA USA Inc., toward the 80%[-owned] subsidiary Nawa Vertriebs-GmbH totaling approximately EUR 800,000 was up for discussion. The Plaintiff was unable to provide collateral for the financing of Nawa Vertriebs GmbH equal to its percentage share of Nawa Vertriebs GmbH. Nawa Vertriebs-GmbH also wrote [that] losses and a capital inflow from shareholder funds were not in the shareholders' interests because they were invested in a development company with high anticipated yields and not in a marketing company like Nawa Vertriebs-GmbH. Thus, the board of directors approved and contractually completed the retransfer of 80% of the business shares on June 21, 2003, therefore exempting Nawa USA Inc. from purchase-price claims. Moreover, capital was free for Nawa USA Inc.'s liquidity, which was bound for Nawa Vertriebs GmbH through a guarantee by the Plaintiff. Therefore, the Defendants did not act culpably or dishonestly in any way, but on behalf of the enterprise as a whole.

c. The Plaintiff, NAWA USA Inc., describes the retransfer as damaging for it and its shareholders. The board of directors consists of shareholders with very high capital contributions like the Defendant Mr. Egli, who is considered a major shareholder with [shares worth] EUR 120,000 and who acts on behalf of another shareholder, Urs Bühler, with [shares worth] EUR 280,000. Likewise, the interest of the board member Bernd Stern, who represents approximately EUR 100,000 in capital stock, is only considered respectable. The accusation of intentional damage as a result of the actions taken by the board of directors is unfounded when one considers not only the investments it made but also the proven management qualities of individual board members. It was also ambiguously argued; there is no clear statement of how the Plaintiff was supposedly affected in the case in question or what concrete losses [it suffered].

d. The quality of the board of directors must be considered very professionally competent; members Bottler, Egli and Stern are internationally active, extremely successful business people (Exhibit B25). By contrast, CEO Thomas Riesinger's lack of professional competence and his overestimation of his own abilities was demonstrated again and again by his faulty decisions and obstinacy as well as by various parties. Even the public prosecutor's office stipulated this fault as a fact in its investigations (Exhibit 3, page 3).

The Plaintiff claims on page 8, paragraph 17 of the complaint that:

> [o]n May 23, 2003, Defendants Bottler, Egli, Stern and Kanzlsperger were legally removed as members of the board of directors by the Plaintiff, NAWA USA Inc., pursuant to Section 228….., by means of a shareholder resolution instead of a shareholder meeting.

**Response:**
Please see No. 12 of the above statement of facts. No valid dismissal took place.

The Plaintiff claims on page 8, paragraph 18 of the complaint that:

On June 20, 2003, the Defendant Peter Kanzlsperger was dismissed from his positions as vice president and COO at the Plaintiff, NAWA USA Inc., by Mr. Riesinger, the CEO and sole remaining member of the board of directors of the Plaintiff, NAWA USA Inc.

**Response:**
Please see Nos. 13 and 15 of the above statement of facts.

The Plaintiff claims on page 8, paragraph 19 of the complaint that:

Even though they were legally dismissed as members of the board of directors of the Plaintiff, NAWA USA Inc., Defendants Bottler, Egli, Stern and Kanzlsperger continued to act as members of the board of directors by [using] the mantle of authority to call a meeting of the board of directors for June 21. This "meeting" was called fraudulently and without actual authority.

**Response:**
Please see No. 12 of the above statement of facts.

The Plaintiff claims on page 8, paragraph 20 of the complaint that:

On June 21, 2003, Defendants Bottler, Egli, Stern and Kanzlsperger held a "meeting" that they pretended was an official meeting of the board of directors of the Plaintiff, NAWA USA Inc. This meeting was unauthorized and illegal. Thomas Riesinger, the Plaintiff's president and CEO and the sole remaining legal member of the board of directors, did not participate in this meeting. The Defendant Alexander Grüter, a lawyer hired by Defendants Bottler, Egli, Stern and Kanzlsperger, took part in the meeting even though he did not legally represent the Plaintiff, NAWA USA Inc.

**Response:**
Please see No. 12 of the above statement of facts.

20. The regularly called meeting on June 21, 2003 was legal because the Plaintiff, NAWA USA Inc., was represented by a majority of the members of the board of directors, and Thomas Riesinger was invited on time to the meeting (Exhibit B22) and was asked to comment on his actions. Also, when asked, Thomas Riesinger could not present the shareholder resolution (written consent) of the dismissal of the members of the board of directors by a [vote of the] majority of shares (Exhibit B3). The directors were aware of the risk of a possible loss for the shareholders as a result of CEO Thomas Riesinger's irrational actions. Agenda item 1 of the meeting on June 21, 2003 was avoiding losses for the shareholders (Exhibit B11). Because the directors no longer had access to NAWA USA Inc. information and financial figures, and the Defendant Peter Kanzlsperger was denied access to the company's offices in Nuremberg, a vote was taken to order Mr. Riesinger to take certain urgent actions (Exhibits B11 and B26). Thomas Riesinger did not comply with the demands of the management.

21. Agenda item 2 of the meeting dealt with the situation at Nawa Vertriebs-GmbH. It was decided that the 80% business share of NAWA USA Inc. would be transferred back to Nawa Vertriebs-GmbH for EUR 20,000. It was also agreed to prepare a corresponding license and marketing agreement to market NAWA products. As already described under No. 19, the retransfer was approved during the meeting on March 25, 2003 on behalf of the shareholders. It could not be financed because of the purchase-price payment demanded by the subsidiary Nawa Vetriebs-GmbH and the guarantee assumption based on the business shares for the illiquid Plaintiff, NAWA USA Inc. The license agreement was supposed to ensure that NAWA products would be promoted and marketed widely.

The Plaintiff claims on page 9, paragraph 21 of the complaint that:

During this meeting Defendants Bottler, Egli, Stern and Kanzlsperger approved a resolution worded as follows: "It is unanimously agreed to transfer the shares of NAWA USA Inc. to Peter Kanzlsperger at a price of EUR 20,000 immediately." This decision was not authorized through the legal authority of the Plaintiff, NAWA USA Inc.

## Response

22. As already described under Nos. 12 and 20, there was authority for approving the resolution because on June 21, 2003 there was a quorum due to the presence of four of the five members of the board of directors. The shares/capital stock of the Plaintiff, NAWA USA Inc., in the amount of EUR 20,000 were returned to the Plaintiff, NAWA USA Inc. To accomplish this, outstanding cost-sharing claims of the Plaintiff, NAWA USA Inc., were offset by the CE certification of NAWA products that was obtained by the Defendant Nawa Vertriebs-GmbH.

In addition, as a result of the retransfer, the guarantee dated October 30, 2000 furnished by the Plaintiff, NAWA USA Inc., and liquidity totaling DEM 100,000 (EUR 50,000) was free for the illiquid Plaintiff, NAWA USA Inc., which was likewise free in terms of the shareholders (Exhibits B26 and B27). The Plaintiff claims this decision and the retransfer are invalid, but in August 2003 the Plaintiff, NAWA USA Inc., received the funds that were freed as a result of the discontinuation of the guarantee. This is contradictory behavior; the Plaintiff cannot rely on it.

The Plaintiff claims on page 9, paragraph 22 of the complaint that:

The Defendants.... also in this meeting approved a unanimous resolution that authorized the Defendant Alexander Grüter to provide all necessary legal documents and to conduct all transactions that were necessary to complete the sale and assignment of the shares of NAWA USA Inc. to Peter Kanzlsperger. This decision was not authorized through the legitimate authority of the Plaintiff, NAWA USA Inc. Even though Thomas Riesinger told him that the alleged meeting was illegal, the Defendant Alexander Grüter took actions based on the resolution..... damaging the rights of the Plaintiff, NAWA USA Inc., and its shareholders.

## Response

23. As described under Nos. 12, 20, 21 and 22, there was a quorum. As representatives of the Plaintiff, NAWA USA Inc., the members of the board of directors assigned tasks to the Defendant Alexander Grüter. As described under Nos. 20, 21 and 22, the management acted on behalf of the shareholders and on behalf of the Plaintiff, NAWA USA Inc. Although the Plaintiff claims between the lines that Defendant Grüter knew there was no quorum, it has not offered and cannot provide any evidence for this claim.

The Plaintiff claims on page 10, paragraph 23 of the complaint that:
At this meeting the Defendants….. approved "On behalf of the shareholders, it is unanimously decided that Nawa Vertriebs-GmbH will continue to be required to sell NAWA products in the sense of a normal business transaction. In order to meet this requirement, Nawa Vertriebs-GmbH grants protection to all (current) customers as of June 21. Until the next meeting of the board of directors, all license agreements will be prepared by Mr. Kanzlsperger in coordination with the board of directors." This decision was not authorized through the legal authority of the Plaintiff, NAWA USA Inc.

**Response:**

24. As described in No. 21, a license agreement was [made] on behalf of and to protect the shareholders. In the period after the vote on June 21, 2003, Thomas Riesinger entered into negotiations regarding a license agreement and did not reject any such agreements. The most recent negotiations occurred on October 30, 2003 (Exhibit B28, page 4). The vote was taken as described above, and therefore the legal authority of the Plaintiff, NAWA USA Inc., was represented by the management quorum.

The Plaintiff claims on page 10, paragraph 24 of the complaint that.
As a result of this vote, from June 21 2003 until today the Defendant Peter Kanzlsperger and the Defendant Nawa Vertriebs-GmbH continued to manufacture, market and profit from NAWA products, which are the legal property of the Plaintiff, NAWA USA Inc., and ….. misused proprietary and confidential information belonging to the Plaintiff, NAWA USA Inc., all of this damaging the Plaintiff, NAWA USA Inc., and its shareholders.

**Response:**

25. The Defendant Peter Kanzlsperger did not manufacture any NAWA products and the Defendant Nawa Vertriebs-GmbH did not market any NAWA products. The Plaintiff is free to specifically indicate which of its products the named defendants marketed at the same time. Also, the Defendants Mr. Stern, Mr. Egli, Dr. Bottler and Mr. Grüter have never sold ointments.

26. NAWA products are not owned by the Plaintiff, NAWA USA Inc., but by the German company NAWA Heilmittel GmbH. The Plaintiff, NAWA USA Inc., is only the exclusive license holder of NAWA products. The Plaintiff has yet to establish a concrete basis for its right to sue.

27. The Defendant Peter Kanzlsperger and the Defendant Nawa Vertriebs-GmbH neither manufacture NAWA products nor use or much less misuse proprietary and/or confidential information. The available agreements with Defendant Kanzlsperger and Nawa Vertriebs GmbH do not contain any confidentiality or

non-competition clauses, which is a requirement for substantiating the accusation in the complaint. Even if there were, there is no reason for the Defendants Mr. Stern, Mr. Egli, Dr. Bottler and Mr. Grüter to be held jointly liable.

28. The Defendant Peter Kanzlsperger never signed an employment contract or a confidentiality agreement.

On page 10, paragraph [missing number] through page 12, paragraph 30 of the complaint, the Plaintiff refers to the Plaintiff's request for judicial assistance by way of a cease-and-desist order and declaratory judgment, including a request for a settlement of accounts.

## Charge I (Breach of the employment contract)

### Response:

29. As described under Nos. 13, 14 and 15, there is no employment contract.
30. As described under No. 25, the Defendant Nawa Vertriebs GmbH does not market or manufacture any NAWA products.
31. As described under Nos. 7 and 26, the Plaintiff, NAWA USA Inc., is not the owner of NAWA products.
32. The Defendant Nawa Vertriebs-GmbH is not responsible for a substantial financial loss for the Plaintiff because Nawa Vertriebs-GmbH does not manufacture or market any NAWA products. The Plaintiff, NAWA USA Inc., is solely responsible for marketing NAWA products.

For the reasons indicated above and the preceding descriptions, the request of the Plaintiff, NAWA USA Inc., for a settlement of accounts and damages totaling USD 1,000,000 is unjustified. An order to abide by a non-existent employment contract seems illusionary. A order to cease and desist using proprietary information, as requested by the Plaintiff, appears unnecessary because neither the Defendant Peter Kanzlsperger nor the Defendant Nawa Vertriebs-GmbH manufacture, sell or market NAWA products.

## Charge II (Deception and fraud)

On page 13, paragraph 31 through page 15, paragraph 37, the Plaintiff refers to supposed deception.

### Response:

33. The members of the board of directors, some of whom are themselves major shareholders or represent major shareholders, always acted on behalf of the shareholders and within the confines of the law. The actions they took were approved in the meeting on March 25, 2003 and were taken for the benefit of the shareholders. The trust of the shareholders in the board of directors was expressed in the general meeting on March 25, 2003 with a [vote of] 99.8% majority of the shares.

34. However, the board of directors did not act on behalf of CEO Thomas Riesinger, whose self-interest was seen as injurious for the shareholders by the members of the board of directors. As a result of the ever-increasing pressure placed on Thomas Riesinger by four of the five members of the board of directors, the CEO acted contrary to the interests of the shareholders by attempting through fraud and deception to terminate the board of directors and to install himself as a "dictator." Since his "dictatorship" [started], the shareholders were only informed of the termination of the management on June 6, 2003, and in another letter dated July 2, 2003 (Exhibit B17, page 6) [he] tried to "humor" [them] regarding dubious developments. There have been no other meetings since the general meeting on March 25, 2003. This gives the impression that the CEO, Thomas Riesinger, cannot answer shareholder questions, for example why he terminated the board of directors and why he is now acting on his own. It also should be mentioned, as under Nos. 19(c) and 19(d), members of the board wanted to protect their interests as shareholders and, second, their qualifications (Exhibit B25) exceeded CEO Thomas Riesinger's overestimation of his own abilities. Accusations of fraud and deception against Defendants Bottler, Egli and Stern are completely baseless and demonstrate the lack of self-reflection and brazenness of the consistently unsuccessful businessman and CEO Thomas Riesinger. He didn't even hesitate paying back shares in his bankrupt NAWA Heilmittel GmbH by means of investor funds and "selling" to the Plaintiff, NAWA USA Inc., 80% [of the former company]. The monetary transactions with Thomas Riesinger's father acting as a silent partner taking a co-entrepreneurial role are currently being investigated by the public prosecutor's office and, as the investigations stand today, appear questionable.

35. The retransfer of the business shares of Nawa Vertriebs-GmbH was carried out on behalf of the shareholders. First, neither the outstanding purchase price for the 80% stake could be paid, nor could the Plaintiff, NAWA USA Inc., meet its guarantee obligation toward the subsidiaries. As a result of the retransfer, the Plaintiff, NAWA USA Inc., acquired additional liquidity totaling approximately EUR 50,000. The accusation of deception with malice and with the intention of causing damage to the Plaintiff, NAWA USA Inc., is unfounded and untenable.

36. The Defendant Nawa Vertriebs-GmbH does not manufacture any NAWA products or market products under the NAWA name. The substantial loss claimed by the Plaintiff, NAWA USA Inc. arising from profits lost as a result of the normal business operations of the Plaintiff, NAWA USA Inc., is solely due to the Plaintiff's inability to market NAWA products.

37. The request for a judgment for damages of USD 1,000,000 and USD 1,000,000 in criminal damages against Defendants Bottler, Egli, Stern, Kanzlsperger, Nawa Vertriebs-GmbH and Grüter is, for the reasons stated above, untenable.

38. The U.S. District Court for the District of Columbia should also be informed of the pending proceedings against NAWA USA Inc. for securities fraud. The findings of the public prosecutor's office are extremely illuminating and the suspicion of fraud in the criminal sense has yet to be clearly proved; nevertheless, Thomas Riesinger is called "questionable" in the investigations. The investigation documents are now at the disposal of the District of Columbia court.

39. In addition, the lawsuit of the board member Mr. Bottler for payment of outstanding board fees was already allowed [to proceed]. His work as a member of the board of directors after his "dubious termination" by Thomas Riesinger was accepted and the Plaintiff, NAWA USA Inc., paid him.

## Charge III ( Theft and embezzlement)

The Plaintiff refers to the alleged theft and embezzlement on page 15, paragraph 38 through page 17, paragraph 43 of the complaint.

### Response
For our response, please see the aforementioned Nos. 25 and 30-36.

## Charge IV (Unfair competition)

The Plaintiff refers to the alleged unfair competition on page 17, paragraph 44 through page 18, paragraph 48 of the complaint.

### Response
For our response, please see the aforementioned Nos. 25 and 30-36.

## Charge V (Violation of trustee's duties)

The Plaintiff refers to the alleged unfair competition on page 19, paragraph 49 through page 21, paragraph 56 of the complaint.

### Response
For our response, please see the aforementioned Nos. 25 and 30-36.

## Charge VI (Dismissal by means of a cease-and-desist order and a declaratory judgment)

The Plaintiff refers to the alleged unfair competition on page 22, paragraph 57 through page 24, paragraph 62 of the complaint.

### Response
For our response, please see the aforementioned Nos. 25 and 30-36.

## Charge VII (Settlement of accounts)

The Plaintiff refers to the alleged unfair competition on page 25, paragraph 63 through page 26, paragraph 65 of the complaint.

### Response
For our response, please see the aforementioned Nos. 25 and 30-36.

## Summary:

1. **Jurisdiction of the court:** The jurisdiction of the District of Columbia court is contested based on the following arguments:

   a. This action in a U.S. court gives the impression of flight from German jurisdiction. The Plaintiff, NAWA USA Inc., and its executives, Thomas Riesinger (CEO), Peter Kanzlsperger (COO) and Silvia Weber (CFO), are subjects of a pending criminal proceeding for embezzling and defrauding German investors. Proving a premeditated criminal offense is currently the responsibility of the Nuremberg-Fürth public prosecutor's office. The current investigation records show that Thomas Riesinger conducted and managed the business of NAWA USA Inc. alone. Various monetary transactions among various companies and individuals are considered questionable.

   b. In previous actions of the accused board members, the Plaintiff admitted and did not contest jurisdiction of German courts. It is therefore "forum shopping."

   c. Thomas Riesinger chose this court because the Plaintiff, NAWA USA Inc., is a company registered in Delaware. The facts show that the Plaintiff, NAWA USA Inc., is only a letterbox company, which the CEO Thomas Riesinger admitted in his statement to the public prosecutor's office. Employees of NAWA Heilmittel GmbH and its managing director, Thomas Riesinger, conduct all transactions. NAWA Heilmittel GmbH is a company registered in Germany. Even the public prosecutor's office could not determine a clear separation between NAWA USA Inc. and NAWA Heilmittel GmbH. On March 9, 2004, the investigators of the public prosecutor's office also confirmed that there was a "letterbox company" involved in this case that changed its address three times since it was founded in December 2001 (Exhibit B2). This knowledge is based on the corresponding request of the German investigatory authorities for an investigation by the U.S. Securities and Exchange Commission (SEC). An investigator from the Frankfurt/Main police headquarters also confirmed this (Exhibit B7, page 4). In a protocol dated August 19, 2004 (Exhibit 3, page 1), the public prosecutor's office confirmed these findings.

   d. A lawsuit in the United States on behalf of the shareholders of the Plaintiff, NAWA USA Inc., seems absurd [because] the investors are exclusively citizens of Germany, Switzerland or [other] European countries. All investors used a German bank account to pay for their investments.

   e. The Plaintiff, NAWA USA Inc., is only a licensee and does not own either the products or the patents. It is trying in this instance to expand its jurisdiction and enforce a judgment in the United States on behalf of the owner, NAWA Heilmittel GmbH, which would be impossible due to the pending criminal proceedings and would have little chance of success.

   f. The Defendant Dr. Hans-Georg Bottler has already sued in Germany for payment of outstanding board fees for the period after the management was terminated under dubious circumstances and with the allegedly legal written consent of the CEO, Thomas Riesinger. Dr.

Bottler's claims were recognized and were paid by the Plaintiff, NAWA USA Inc.

**g.** As a "dictator," CEO Thomas Riesinger is not currently acting on behalf of the shareholders. Since July 2, 2003, the shareholders have not received any information and no general meeting has been held since March 25, 2003.

## 2. **Charges and Defendants:**

**a.** The charge of **breach of the employment contract** and the related charge of breach of trust and violation of trustee's duties against the Defendant Peter Kanzlsperger is untenable because:

- the Defendant never signed an employment contract and an unsigned copy was submitted as Exhibit III of the action;
- the Defendant Mr. Kanzlsperger and the Defendant Nawa Vertriebs-GmbH do not manufacture NAWA products or market products under this brand name.

**b.** The charge of **deception and fraud**, including the charge of conspiracy, intrigue and the malicious planning of a plot:

- The retransfer of business shares deemed illegal by the Plaintiff, NAWA USA Inc., was done legally on behalf of the shareholders.
  - o The management always acted on behalf of the shareholders. The requested purchase-price payment and the requirement of furnishing a guarantee corresponding to the 80% share of the Plaintiff, NAWA USA Inc., could not be realized because of the consistently poor liquidity situation of the Plaintiff, NAWA USA Inc. The retransfer and release from the guarantee obligation executed in 2000 in turn added liquidity to the Plaintiff, NAWA USA Inc., and also was accepted by the Plaintiff, NAWA USA Inc. The Plaintiff, NAWA USA Inc., was released from its financial responsibility toward its 80% subsidiary and shareholder funds were not used to finance a marketing company.
  - o The retransfer and a radical cost-reduction scheme were unanimously approved at a regular meeting of the board of directors in March 2003. Although the chairman of the board, Thomas Riesinger, tried to use his veto and further his own interests, he was unsuccessful. The management was confirmed by [a] 99.8% [vote] in the same general meeting in March 2003. In a "furtive action" on May 23, 2003, one day before the meeting of the board of directors in which he was supposed to take actions objectionable to him, the CEO, Thomas Riesinger, terminated the other members of the board of directors by submitting written consent allegedly obtained in the period from after the annual

general meeting until May 23, 2003, and claimed the majority of shareholders had approved the dismissal of the management and had authorized the CEO, Thomas Riesinger, to solely represent [the company]. The members of the board of directors requested submission of the written consent; it was provided only approximately 1 ½ years later. The decisions made in the regular meeting of the board of directors on June 21, 2003 were legally approved by a majority vote of the members of the board of directors.

c.     The charge of **theft and embezzlement**
- Some of the members of the board of directors and some of the Defendants are themselves owners of substantial amounts of stock or represent large investment sums [owned] by shareholders. The decisions that were made were made on behalf of the shareholders.
- The qualifications of the members of the board of directors and Defendants Bottler, Egli and Stern are beyond question as a result of their personal histories and international business successes; these are persons of integrity.
- The Plaintiff, NAWA USA Inc., was not robbed but was released from responsibilities that it could not perform.
- After reviewing the books and accounts, the investigating public prosecutor's office discovered questionable monetary transactions that leave the CEO, Thomas Riesinger, open to the suspicion of the accusation of fraud.
- The Defendant Mr. Kanzlsperger and the Defendant Nawa Vertriebs-GmbH do not manufacture NAWA products or market products under this brand name.
- The financial loss supposedly suffered is not apparent. As the licensee, the Plaintiff, NAWA USA Inc., is responsible for promoting sales of NAWA products through NAWA Heilmittel GmbH. The damages requested by the Plaintiff as a result of lost profits seem illusionary. The Plaintiff's lack of success in marketing NAWA products is not the fault of the Defendants, but rather is due to the incompetent management of the Plaintiff, NAWA USA Inc.

d.   The charge of **unfair competition** must be considered impermissible based on the arguments above and only reflects the desire of the CEO, Thomas Riesinger, to be a successful businessman without having to exercise his own initiative.

e.   The charge of **violating trustee's duties**
- The qualifications of the members of the board of directors and Defendants Bottler, Egli and Stern are beyond question as a result of their personal histories and international business

successes; each of these men is known abroad as a person of great integrity, conscious of his responsibilities.

- Some of the members of the board of directors and some of the Defendants are themselves owners of substantial amounts of stock or represent large investment sums [owned] by shareholders. The decisions that were made were made on behalf of the shareholders.

- The management and the Defendants always acted on behalf of the shareholders. The requested purchase-price payment and the requirement of furnishing a guarantee corresponding to the 80% share of the Plaintiff, NAWA USA Inc., could not be realized because of the consistently poor liquidity situation of the Plaintiff, NAWA USA Inc. The retransfer and release from the guarantee obligation executed in 2000 in turn added liquidity to the Plaintiff, NAWA USA Inc., and also was accepted by the Plaintiff, NAWA USA Inc. The Plaintiff, NAWA USA Inc., was released from its financial responsibility toward its 80% subsidiary and shareholder funds were not used to finance a marketing company.

f.  The charge of **dismissal by means of a cease-and-desist order and a declaratory judgment**, and the request **for settlement of accounts** are impermissible based on the arguments indicated above and are rejected as unfounded.

*The defendants*

_____
DR. HANSGEORG BOTTLER


_____
FERDY EGLI


_____
BERND STERN


_____
PETER KANZLSPERGER


_____
NAWA VERTRIEBS-GMBH


_____
ALEXANDER GRUTER

*The defendants*

_____

DR. HANSGEORG BOTTLER

_____

FERDY EGLI


_____

BERND STERN


_____

PETER KANZLSPERGER


_____

NAWA VERTRIEBS-GMBH


_____

ALEXANDER GRUTER

*The defendants*

_____

DR. HANSGEORG BOTTLER

_____

FERDY EGLI

_____

BERND STERN

_____

PETER KANZLSPERGER

_____

NAWA VERTRIEBS-GMBH

_____

ALEXANDER GRUTER

*The defendants*

_____

DR. HANSGEORG BOTTLER

_____

FERDY EGLI

_____

BERND STERN

_____

PETER KANZLSPERGER

_____

NAWA VERTRIEBS-GMBH

_____

ALEXANDER GRUTER

March 21, 2007                                                                    21

*The defendants*

---

DR. HANSGEORG BOTTLER

---

FERDY EGLI

---

BERND STERN

---

PETER KANZLSPERGER

---

NAWA VERTRIEBS-GMBH

---

ALEXANDER GRUTER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April, 2007, I caused a copy of the foregoing reply to be served by e-mail to the attorney to the plaintiff, at saw5198@earthlink.net.

I FURTHER CERTIFY that on this 20th day of April, 2007 I caused copies of the foregoing reply and Exhibits (27) to be mailed via Air Mail, postage prepaid, to the court and the attorney of the plaintiff.

Alexander Grüter