IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

NAWA USA, INC.,                )
   a Delaware Corporation    )
                    )
      Plaintiff          )
                    )
         v.            )  Civil No.  06-1150 (RMC)
DR. HANS-GEORG            )
   BOTTLER, et. al.         )  Judge Collyer
                    )
     Defendants          )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO THE MOTIONS TO DISMISS OF DEFENDANTS
ALEXANDER GRUTER, AND NAWA
VERTRIEBS-GMBH TO DISMISS PLAINTIFF'S COMPLAINT**

1      Plaintiff, NAWA USA, INC., by and through its attorney, STEPHEN A.

WEITZMAN, hereby submits its Memorandum of Points and Authorities in Opposition to

the Motions of Defendants Dr. Hans-Georg Bottler, Ferdy Egli, Bernd Stern, Peter

Kanzlsperger, Alexander Gruter, and NAWA VERTRIEBS-GMBH to Dismiss Plaintiff's

Complaint on the grounds of lack of in personam jurisdiction, failure to conform with the

D.C. long arm statute, *forum non conveniens* and lack of standing to sue in the District of

Columbia.  In addition Plaintiff disagrees that fraud has not been specifically plead as

required under FRCP 9(b), but will seek the Court's permission to further amend the

relevant count on fraud and amend the allegation of personal jurisdiction based upon the

facts.

**I. BACKGROUND**

2      The substantive case involves issues of American Law - i.e.- Construction of

Delaware Corporations Law (similar to the law of the District of Columbia)  Plaintiff, a

Delaware corporation in good standing, [EXHIBIT A] properly registered and doing

business in the District of Columbia [ EXHIBIT B] conducts business in United States in

the District of Columbia and surrounding closely associated metropolitan area.  Plaintiff

bases its claims on the actions of its board of directors and former employee in

consultation with a German lawyer advising on issues of American (Delaware Law) in

contravention or not in accordance with the Corporate Charter and By Laws [EXHIBIT C

& D, attached to the Complaint].  It also involves breach of an employment contract

between NAWA USA Inc. and Mr. Kanzlsperger governed by New York Law. [EXHIBIT

E, attached to the Complaint]. EXHIBIT G is a contract negotiated before and signed after

the disputed board meeting by NAWA USA Inc. and Health Pathways Inc. [Witnesses

from Health Pathways and counsel present at the Board meeting and NAWA's other local

counsel in Maryland, Howard Ross, Esq., who drafter correspondence to the Board prior

to their meeting will also be called as a witness.]

3       The Defendant former members of the Board of Director assumed their roles

under NAWA USA INC Delaware Charter and By Laws (Attached to the Complaint).

They carried out that roll at a meeting of the Board of Directors conducted in the District

of Columbia, in February 2002, [EXHIBIT F] the then intended principal place of

business for conduct of the corporation to exploit technology in the United States.

4       At that meeting the board elected Thomas Riesinger as President and CEO, Peter

Kanzlsperger, COO and Vice President, and Sylvia Weber Secretary.  Mr. Riesinger was

also elected Chairman of the Board by unanimous consent. Following file elect ion of the

chairman the board then considered what schedule would be appropriate for subsequent

regular meetings of the board of directors. After a short discussion among the directors. It was resolved by unanimous consent that regular meetings of the board would take place at least every 6 months. The chairman would be responsible for selecting the date, time and location of each meeting.

5       Indeed, those very serious obligations as Board members under Delaware law were voluntarily assumed prior to the February 200 board meeting and those obligations constitute a contract between the board members and the lawful domestic corporation and they accepted and carried out those duties under Delaware law.

6       Plaintiff has continuously maintained an office in the District of Columbia through and office rental firm that provides mail service and full offices services as needed. Plaintiff's employees include Thomas Riesinger and Sylvia Weber who reside in Germany but travel to D.C. and the surrounding metropolitan area on NAWA USA Inc. business. Since 2002 these employees have traveled to the District of Columbia and surrounding metropolitan environs to negotiate and license its technology to a Maryland/Mississippi corporation, support U.S. government regulatory approvals and promotion of sales of its wound healing and other products to the U.S. military. In the last year alone Plaintiff's employees has made several trips to D.C. and its immediate environs to renegotiate its licenses and hire a new Vice president for U.S. business development. Past failures to develop revenue in the United States to justify a full time office and staff may now be remedied. Negotiations are about to be entered into with a major American corporation to license technology. Conduct of those negotiations will take place in D.C. and its environs and Minnesota. The office in D.C. is by no means a sham.

7       Further Plaintiff has corrected any technical problems regarding it D.C. residence by filing all necessary form and back fees that qualify it (even retroactively) as a resident of this forum to sue Defendants under the long arm statutes of the District of Columbia.

8       Defendants' assertions that this Court (1) lacks of personal jurisdiction over Defendants (2) is a non-convenient form that requires under the law transfer to Germany and (3) that Plaintiff cannot sue in the District of Columbia, are entirely incorrect and are based upon factual error and misconstruction of the law of personal jurisdiction and the very extraordinary equitable doctrine of forum non-conveniens (legislated in District of Columbia law. [EXHIBIT B contains the Certificate of Authority as filed November 20, 2007, and corrected January 2, 2008, with all required back fees paid.  As discussed below D.C> law and regulations recognized the retroactivity of the registration. Further business was being conducted in D.C. and its metropolitan area during the period. Plaintiff also believes activities commence as far back as 2002 but the documents relevant thereto are unavailable.] Plaintiff accordingly at the time of filing the lawsuit under D.C. law and regulations a registered foreign corporation.

9       Throughout its motion defendants argue that the law of the case is German and not U.S. law.  To the contrary this case is one resolving around U.S. law and policy regarding conduct and fiduciary duties of boards of directors to their shareholders under U.S. law. These issues have had marked importance and great notoriety in recent years.  Indeed its is well known that corporate transparency has been a problem in Europe where much corporate law has allowed secrecy which has only been addressed in the EU in recent years. Based upon those trends even punitive damages for breach of duties and related

offences by the board may be enforceable in Germany and Switzerland.  See Professor

Behr, Punitive Damages In American And German Law …. (Published on the internet at

http://lawreview.kentlaw.edu/articles/78-1/Behr-4-02-03.pdf.]

### A.    Facts & Legal Issues

10    The factual and legal issues of the case revolve around actions by a Board of

directors at an unauthorized meeting of a duly authorized Delaware Corporation to take

certain actions that permitted transfer of assets to a corporation owned and controlled

(alter ego) of one of its board members.  Though at this point of the case the issues are

one of jurisdiction a main concern in addressing forum non-conveniens is whether U.S. or

foreign law applies. Despite Defendants contention it is U.S. law that applies to the

identified actions of the board and subsequent damages to the corporation. This case is a

case of the application of United States law regarding (1) an unauthorized and illegal

Board meeting, and (2) the transfer of assets of a United States entity by its Board of

Directors improperly and without proper consideration (for less than fair value).

11    German law has no place here despite the assertions of learned German counsel

(including Mr. Gruter who not only advised the board contrary to U.S. law but also

attempted to represent the defendants in a U.S. Court - contrary to Plaintiff's counsels

pleas that they get U.S. counsel.)  Nor is a German Court more convenient, efficient or

cost effective or less expensive as the travel and hostel costs for moving Plaintiff's

attorney (as well Defendants attorneys to Germany with are miniscule compared to the

legal fees.

12    A central fact relevant to in personam jurisdiction is not just minimized it is

negated in the discussion of law in the Defendants' memorandum is the fact that the

defendants, former Board members and employee came to D.C. in 2002  [Bottler, ¶ 4, PK

¶21,  Stern ¶] to attend an initial Board meeting.  Mr. Egli, it is believed, was unable to

travel but attended the meeting by telephone (as permitted under Delaware law and the By-

Laws) and was elected and accepted his appointment. This fact contravenes Mr. Egli's

statement in Egli ¶ 5. Whether he was present by phone or not is irrelevant since he had

been appointed and accepted his position on the board of a U.S. corporation.

13      Further the defendants' claim that since the actions at the board meeting in

question in 2003 occurred in Germany Defendants claim German law applies. That claim

that German law applies is nonsense.  Further and even more important is the fact that

these men voluntarily assumed duties in D.C. to perform under the corporate charter and

bylaws of NAWA USA Inc.  The Defendant former board members voluntarily signed on

to obey and follow the charter and laws that apply to the corporation when they attended

and were elected to the Board of Directors of NAWA USA Inc. in February 2002, in

Washington D.C board meeting.

14      The claim that the board meeting held in Germany makes German law apply to the

Boards' conduct is absurd.  The Bylaws provide that the board meetings may be held

anywhere in the world and therefore if the meeting is in Moscow, Russian law applies, or

Bermuda, Bermuda law applies is equally absurd.

15      As to other facts posed to persuade the Court it lacks jurisdiction Plaintiff asserts

as follows;

16      NAWA Vertriebs-GmbH is the alter ego of Peter Kanzlsperger a company in

which he is the sole managing director. Kanzlsperger ¶3. It is in reality no more than Mr. Kanzlsperger's alter ego and facility for misusing NAWA USA's technology and selling products and making profits.

17    Mr. Grueter states that he "was retained by the Board of Directors of NAWA USA, Inc. in Germany in connection with the execution of sale of shares of NAWA Vertriebs-GmbH under German law before a German notary. All of the services I performed for NAWA USA, Inc. were performed in Germany. Payment for those services was also rendered in Germany." ¶ 5 This statement is untrue. He was retained to advise the Board that they could conduct the meeting and advised on the transfer of assets from NAWA USA Inc. to NAWA Vertriebs-GmbH. His claim of only ministerial function is disingenuous. He was giving legal advice as to the validity of the board meeting as well as the propriety of the transfer by board action. As such he was advising on U.S. law issues on which he lacked qualifications. His advice and the board actions were contrary to U.S. law. In such a capacity he was guilty of counseling a U.S. corporation's board at least to act in an unauthorized manner, breach its duty to shareholders and commit fraud (sale of assets for less than fair value). Grueter ¶¶5, 6.

18    Further Mr. Gruter has perjured himself in previous Court papers. In ¶ 7, 8 and 9 he remarks about a prior lawsuit by the board members to collect board fees. In the court papers he filed previously he stated that the case was settled and all claims possible between the board members and the company were dismissed with prejudice. To the contrary. Mr. Riesinger explicitly rejected Mr. Grueter's attempt to place such restrictions on NAWA USA Inc. in the settlement and the documents did not support Mr. Grueter's

previous assertion.

19      In regards to the employment agreement between NAWA USA Inc. and Mr.
Kanzlsperger not being executed and by implication void the Defendants assertion that it
was not binding is wrong.  The contract was in writing and Mr. Kanzlsperger performed
under it and was compensated in accordance with its terms.  The contract explicitly states
that is governed by New York law, not German law. [EXHIBIT E]

## B.  Choice of Federal Court

20      Plaintiff could have sued in the Superior Court of the District of Columbia but
chose to litigate in the Federal Court where the case could have been removed. It did so in
order to afford Defendants what is frequently described a fairer place for foreigners to
litigate.

## II. ARGUMENT AND POINTS OF AUTHORITY

21      The Defendants state there are three issues raised regarding jurisdiction and
forum: 1) personal jurisdiction over defendants, 2) forum location and 3) registration of
NAWA USA Inc., a foreign corporation, in the District of Columbia.

22      Thrown in also is the allegation that fraud has not been sufficiently pleaded
under FRCP 9 (b). While we disagree with that we will motion to amend the pleading on
that ground and submit and amended count for further clarity and perform any other
changes to the Complaint that the Court requires.

### A.    PERSONAL JURISDICTION[1]

23         Before a court can hear and decide a particular- case, it not only must have jurisdiction over the subject matter of the dispute, it also must have jurisdiction over the persons or property involved in the action. The latter type of jurisdiction is referred to as personal, or territorial, jurisdiction. The scope of this Court's personal jurisdiction is determined by the federal Constitution, which defines the outermost limits of the District of Columbia's power over persons and things outside its borders. Today personal jurisdiction is based upon the relationship that exists between the place where an underlying transaction took place, the parties, and the forum.

24         In determining whether a basis for the exercise of personal jurisdiction exists, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." _Crane v. New York Zoological Soc.,_ 894 F.2d 454, 456 (D.C.Cir.1990) (_citing Reuber v. United States,_ 750 F.2d 1039, 1052 (D.C.Cir.1984)).

25     As will be shown below the requisite "Minimum Contacts Requirement," "Fairness and Reasonableness" test for exercising jurisdiction, and Nexus Requirement of the D.C. long arm statute have been met.

> **i.     The Former Board Member Defendants Have Sufficient Contacts With the District of Columbia To Subject Them to the Jurisdiction of This Court.**

26     In this case, the facts central to the Motion's disposition are not disputed, i.e. that the former members of the Board of Directors traveled to D.C. in 2002 to be elected and installed as directors of the corporation under the Delaware charter and corporate bylaws of NAWA USA Inc..  One Board member, it is believed, could not travel and participated by phone. [Mr. Egli]

The test as articulated by the Supreme Court, The United States District Court for the District of Columbia and the District of Columbia court of Appeals are all identical. [2] These cases are all based upon the 1945 decision in International Shoe Co. v. Washington, that there must be "minimum contacts" between the defendant and the Forum State such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

The plaintiff has the burden of establishing that the trial court had personal jurisdiction over a defendant. Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); Holder v. Haarmann & Reimer Corporation, 2001 DC 169 (DC, 2001. On this matter rthe facts are not in dispute.

These legal principles may be summarized as follows:

> "First, "[a] court may assert personal jurisdiction over a nonresident defendant where service of process is authorized by statute and where the service of process so authorized is consistent with due process." Mouzavires v. Baxter, 434 A.2d 988, 990 (D.C. 1981) (en banc) (per curiam) (plurality opinion) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)). Because the "transacting business" prong of the District's long-arm statute is coextensive with the Due Process Clause, e.g., Shoppers Food Warehouse, supra, 746 A.2d at 329; Mouzavires, supra, 434 A.2d at 993, our personal jurisdiction analysis in this case merely requires us to consider whether any business transacted by [the former Board Members] in the District was sufficient to permit the court to conclude that "the assertion of personal jurisdiction comports with due process." Mouzavires, supra, 434 A.2d at 993 (citation omitted). In other words, we must determine whether, through its "business contacts within [the District of Columbia,]" [the former Board Members] had such "minimum contacts with [the District] that the maintenance of [Plaintiff's] suit does not offend traditional notions of fair play and substantial justice." Shoppers Food Warehouse, supra, 746 A.2d at 330, 331 (citations and quotation marks omitted); see also, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780-81 (1984); Int'l Shoe, supra, 326 U.S. at 316. A critical inquiry is whether [the former Board Members] "…purposefully directed [their] activities at residents of the forum." Shoppers Food Warehouse,

supra, 746 A.2d at 331 (quotation marks, alteration, and citation omitted). As the Supreme Court explained in Burger King v. Rudzevicz, 471 U.S. 462, 471-72 (1985), [t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." [Int'l Shoe, supra,] 326 U.S. at 319. By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," World-Wide Volkswagen[, supra, 444 U.S. at 297].

Second, these minimum contacts must derive from the defendant's having "transact[ed] any business in the District of Columbia." D.C. Code § 13-423 (a)(1). *fn5 When we decided in Mouzavires, supra, that section 13-423 (a)(1) reached to the limits permitted by the Constitution, we held that "the sweep of the `transacting any business' provision [of the District's long-arm statute] covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the Due Process Clause." 434 A.2d at 993 (emphasis added). Similarly, when setting forth the legal principles applicable to a personal jurisdiction analysis under section 13-423 (a)(1) in Shoppers Food Warehouse, supra, we focused on the extent of the "nonresident defendant's business contacts . . . within the forum jurisdiction." 746 A.2d at 331 (emphasis added); see also Flocco v. State Farm Mut. Auto. Ins. Co., 752 A.2d 147, 163 (D.C. 2000) (rejecting exercise of personal jurisdiction over individual corporate officers and directors because they were "clearly not `doing business' within the District of Columbia **when they were "merely [alleged to have acted as] employees of a company that has contacts with the District" (emphasis added)).** Consequently, to satisfy the due process requirements associated with the Superior Court's exercise of personal jurisdiction over a nonresident defendant under section 13-423 (a)(1), the plaintiff must show that the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents. Shoppers Food Warehouse, supra, 746 A.2d at 330-31. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." Burger King, supra, 471 U.S. at 475 (citations and quotation marks omitted). "Jurisdiction is proper [only] where the contacts [between the defendant and the forum] proximately result from actions by the defendant himself that create a substantial connection with the forum State." Id. (emphasis in original; citations and quotation marks omitted).

Third, the minimum contacts analysis does not constitute a "mechanical test[]" in which we apply "talismanic jurisdictional formulas" to determine whether the Superior Court may properly exercise personal jurisdiction over any given defendant. Id. at 478, 485 (quotation marks omitted). Rather, "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." Id. at 485-86 (citations and alteration omitted), quoted in Shoppers Food Warehouse, supra, 746 A.2d at 328. We therefore turn to the specific facts underlying the personal jurisdiction analysis in this particular case." (Footnote omitted; alteration in quotation in original by the Court and alterations in italics by plaintiff.)  Holder at ¶¶20-24

30    The relevant facts are that the Defendant former Board members admitted that they were board members of a U.S. corporation and that they traveled to D.C. (one participated by phone) to be carry out there duties as Board members.  The obviously accepted their positions. Thereby they assumed the responsibilities of board members under Delaware law in the District of Columbia.  They knew that NAWA USA Inc. was an American corporation and intended to be based in D.C.

These actions are sufficient to demonstrate "purposeful and deliberate" actions by the individuals including activities in the District of Columbia. They were at a key time transacting the business of the corporation in the D.C. at a lawful shareholders meeting. They acted voluntarily, purposefully and deliberately.  The fact that they would be subject to U.S. jurisdiction for misdeeds was foreseeable.  That was the obligation they were under taking.   The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), quoting International Shoe Co. v. Washington, 326 U.S., at 316, 66 S.Ct., at 158. Most recently we have reaffirmed the oft-quoted reasoning of Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S., at 475, 105 S.Ct., at 2183. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Ibid., quoting McGee v. International Life Insurance

Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original).

Summarizing the tests Justice O'Connor stated:

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), quoting International Shoe Co. v. Washington, 326 U.S., at 316, 66 S.Ct., at 158. Most recently we have reaffirmed the oft-quoted reasoning of Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S., at 475, 105 S.Ct., at 2183. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Ibid., quoting McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original). …

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' Hanson v. Denckla, 357 U.S. [235,] 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) ], it has clear notice that it is subject to suit there … and if the risks are too great, severing its connection with the State. Id 108-110.

The "substantial connection," Burger King, 471 U.S., at 475, 105 S.Ct., at 2184; McGee, 355 U.S., at 223, 78 S.Ct., at 201, between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. Burger King, supra, 471 U.S., at 476, 105 S.Ct., at 2184; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). Id. 112.

31    Here it is clear that being "hauled" into a U.S. Court was foreseeable when the obligations to conform to U.S. laws were undertaken.  As the Supreme Court stated in World-Wide Volkswagen, [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there." Id., at 297, 100 S.Ct., at 567."

32    As Plaintiff claims, in less than a year and a half the Defendants breached the duties in part and resolutions undertaken at the meeting in D.C.

33    The finding by this Court of personal jurisdiction is not "manifestly unjust.

34    As to Mr. Mr. Grueter, he is a German lawyer and was the agent of the former Board Members who advised them and participated in the contested board meeting to hold the meeting and commit the illegal actions [under Delaware law] despite their previous lawful dismissal by Mr. Riesinger.

35    NAWA Vertriebs-GMBH, is Peter Kanzlsperger's alter ego corporation and the vehicle through which Mr. Kanzlsperger has garnered his ill gotten gains from NAWA USA Inc.'s technology.

## ii. Specific Jurisdiction under the D.C. Code {Nexus Requirement]

36    Defendants now maintain that §13-423 (a) and (b), the District of Columbia's long arm statute does not apply because the "tort" and other alleged violations took place outside the District.  We disagree based upon the interpretation and application of D.C. law by its courts.  See, Ags Intern. Services S.A. v. Newmont USA Ltd., 346 F.Supp.2d 64 (D.D.C., 2004):

> "Authorization for exercising specific jurisdiction over a defendant in this jurisdiction is found at D.C. Code § 13-423, which has been held to be "coextensive in reach with the personal jurisdiction allowed by the due process clause of the United States Constitution...."[21] *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C.2000). In order to meet its burden of proving the existence of specific jurisdiction under § 13-423(a)(1), a plaintiff must demonstrate that (1) the defendant transacted business in the District of Columbia, (2) that the cause of action arises from the business transacted in the District, and (3) that the "defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend `traditional notions of fair play and substantial justice.'" *DSMC*, 273 F.Supp.2d at 20 (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154); *see also Jacobsen*, 201 F.Supp.2d at 104; *Formica v. Cascade Candle Co.*, 125 F.Supp.2d 552, 553 (D.D.C.2001). Id 77-78. ..."

37      The exercise of personal jurisdiction over all of the individual Defendants by this

Court under the circumstances of this case relates to business transacted in the District All

of the individual former Board Member Defendants voluntarily entered into their

positions as directors, officers, or both, of Plaintiff Corporation.  They entered into a

**contract**, governed by Delaware law with the corporation when they were elected board

members and accepted the position. [See Harrah's Entertainment v. Jcc Holding Co., 802

A.2d 294 (Del. Ch., 2002)[3]], thereby voluntarily subjecting themselves to the jurisdiction

of the courts of the District of Columbia for all matters arising out of their activities with

respect to the Plaintiff corporation.  Further the complained of actions of the individual

Defendants [and their agent Mr. Grueter who advised them] were taken with the intent of

impacting the Plaintiff corporation which has its principal place of business or residence

in the District of Columbia.

All of the individual Defendants (except one) voluntarily attended (in person) a meeting

of the Board of Directors of Plaintiff Corporation in the District of Columbia.  The one

director who did not personally attend voluntarily participated in the meeting by

telephone.  All of the individual Defendants were well aware of the fact that the Plaintiff

Corporation had its [intended] principal place of business in the District of Columbia at

that time and all of them voluntarily participated in the profit making activities of the

corporation.

Jurisdiction here is consistent with considerations of fundamental fairness and due process

in as much as this case arises from their activities concerning a corporation which is

qualified to do business in the District of Columbia and whose principal place of business

or residence is located in the District of Columbia.[4]

Due process is not violated by having this case heard in this Court.

As Judge Walton notes:

> *Id.* In assessing the reasonableness of the factors a plaintiff claims merit a court exercising personal jurisdiction over an alien defendant, due process requires the court to assess whether the defendant could reasonably anticipate litigation with the plaintiff in the District as a result of its activities, whether the plaintiff is a resident of the District, and whether it would be fair and reasonable to force the alien defendant to litigate here. *Id.* In *Shoppers,* the District of Columbia Court of Appeals found that a Maryland corporation which advertised in The Washington Post had the necessary minimum contacts with the District "by purposefully directing advertisements for its Maryland and Virginia stores at a potential customer base in the District of Columbia...." *Id.* at 331. Therefore, the court concluded that the defendant in *Shoppers* "'should reasonably [have] anticipate[d] being haled into court [in the District]' by a customer from the District who received an injury in one of its Maryland stores." *Id.* (quoting *World Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559). Id. 79.

42    Authorization for exercising specific jurisdiction over a defendant in this

jurisdiction is found at D.C. Code § 13-423, which has been held to be "coextensive in

reach with the personal jurisdiction allowed by the due process clause of the United States

Constitution...."21 <u>Shoppers Food Warehouse v. Moreno</u>, 746 A.2d 320, 329 (D.C.2000).

[<u>Ags Intern. Services S.A. v. Newmont Usa Ltd.</u>, 346 F.Supp.2d 64 (D.D.C., 2004)] Id

78.]

> In order for the plaintiffs' claims to arise from business transacted in the District by the defendant, the plaintiffs must demonstrate "that the claim raised [has] a discernible relationship to the `business' transacted in the District." Shoppers, 746 A.2d at 329 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A discernible relationship exists when the non-resident defendant has minimum contacts with the District "such that [the non-resident] should reasonably anticipate being haled into court [here]." Id. (quoting Trerotola v. Cotter, 601 A.2d 60, 64 (D.C.1991) (quoting World Wide Volkswagen, 444 U.S. 286 at 297, 100 S.Ct. 559).)
>     "[S]ection 13-423(a)(1) is coextensive in reach with the personal jurisdiction allowed by the due process clause of the United States Constitution...." Id. The due process clause allows this Court to exercise personal jurisdiction over a non-resident defendant who has minimum contacts with the District of Columbia. Id.
>     [T]he minimum contacts principle requires [the Court] to examine the quality

and nature of the nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental;... where a nonresident defendant has purposefully availed itself of the benefits and protections of the District in engaging in a business activity in the forum jurisdiction, it is fair and reasonable to expect it to anticipate being sued in that jurisdiction....

Id. In assessing the reasonableness of the factors a plaintiff claims merit a court exercising personal jurisdiction over an alien defendant, due process requires the court to assess whether the defendant could reasonably anticipate litigation with the plaintiff in the District as a result of its activities, whether the plaintiff is a resident of the District, and whether it would be fair and reasonable to force the alien defendant to litigate here. Id. (quoting World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559). Id 78-79.

43     Finally Defendants have failed to show why "traditional notions of fair play and substantial justice," International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), invalidate Maine's exercise of personal jurisdiction here. Reasonableness in this setting depends on several factors, including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asabi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

44     Here the interests of D.C. (and Delaware) are manifest [And nothing would be gained by defendants if the case were moved to Delaware.]. The Plaintiff is a resident of D.C. It is U.S. law not German law that is at issue.

45     Defendants' claim that defending against the suit is overly burdensome is conclusory and without merit. The Defendants have hired Atlanta and D.C. counsel. Plaintiff has submitted to the Jurisdiction so it does not complain that its employees will need to travel. All the individual former Board members assumed their duties and must have know the consequences of their under taking. Further a key witness will be a U.S. attorney located in Virginia who prepared letters informing the board members that they

were discharged prior to the board meeting at issue.

46    Finally, Plaintiff has an obvious interest in obtaining relief in D.C. where it seeks

to establish long term relationships.

### iii. Plaintiff is a Resident of the District of Columbia

47    Plaintiff has qualified to do business in the District of Columbia.  It held its Board

meeting in D.C. and its employees have traveled to D.C. in conjunction with its business

not just with regulatory agencies but with it licensee which was located in Maryland from

2003 to date. Though it was tardy in keeping it D.C. papers in order it has done so. And

under D.C. regulations such qualification are deemed by the appropriate District of

Columbia statute to be retroactive. [5]

### III. FORUM NON CONVENIENS

48      Forum non conveniens allows a court to exercise its discretion to avoid the

oppression or vexation that might result from automatically honoring plaintiff's forum

choice. It is an equitable doctrine thought it has been incorporated by statute in D.C. 13-

425 (1995). It is one familiar to this Court. See, BPA International, Inc. v. Sweden, et.

al., Civil Action No. 1:02-1025, pages 13-17 (RMC). (D. D.C. September 5, 2003), and is

fully discussed in Coulibaly v. Malaquias, 728 A.2d 595 (DC, 1999) as follows:

> "[T]this court has adopted the forum non conveniens analysis articulated
> by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)."
> Smith v. Alder Branch Realty Ltd. Partnership, 684 A.2d 1284, 1287-88
> (D.C. 1996). Under the Gulf Oil analysis, a court considers two categories
> of factors in deciding whether to dismiss for forum non conveniens, the
> "private interest of the litigant[s]" and the "public interest" of the forum.
> Id. at 1288. Factors relevant to the private interests of the litigants include:
>     Private interest factors relevant to dismissal for forum non conveniens
> include:
> 1) the relative ease of access to sources of proof; 2) the availability of
> compulsory process for attendance of unwilling witnesses; 3) the cost of
> obtaining attendance of willing witnesses; 4) the possibility of viewing
> premises, if view would be appropriate to the action; 5) all other practical
> problems concerning the ease, expedition and expense of the trial; 6) the
> enforceability of a judgment once obtained; 7) evidence that the plaintiff
> attempted to vex, harass or oppress the defendant by his choice of forum,
> and 8) the relative advantages and obstacles to fair trial." Mills, supra, 511
> A.2d at 10 (citing Gulf Oil, supra, 330 U.S. at 508

49      The public interest factors include:

> 1) administrative difficulties caused by local court dockets congested with
> foreign litigation; 2) the local interest in having localized controversies
> decided at home; 3) the unfairness of imposing the burden of jury duty on
> the citizens of a forum having no relation to the litigation, and 4) the
> avoidance of unnecessary problems in conflict of laws and in the
> interpretation of the laws of another jurisdiction." Id. (citing Gulf Oil,
> supra, 330 U.S., at 508).

50      Further:

> Once the relevant private and public factors are considered, "unless the
> balance is strongly in favor of the defendant, the plaintiff's choice of

forum should rarely be disturbed." Id. (quoting Gulf Oil, supra, 330 U.S. at 508).

51    Where as here the Plaintiff resides in the District of Columbia the Defendants therefore have the burden of proof on this issue.

52    Defendants argue that the claim arose in Germany.  While the action of the Board occurred there the action had more substantial impact in America on Delaware and the District of Columbia.  It is U.S. law and policy on which the Defendants actions have bearing, not German law. The place of the Board meeting could have under the Charter taken place anywhere is the world and it would have always impacted the corporation in its charter state or place of residence.  Germany has no specific interests here. Again applying their rational if the board meeting was in Russia, it would be Russian law, etc.

53    Applying these tests to the instant case we see that the private and public interest factors weigh more toward Plaintiff than they do defendants.

**Private Interest**

   1) The relative ease of access to sources of proof,

        a. all evidence in plaintiff possession is accessible here in the United States.  This includes the files and testimony of American counsel that set up the corporation, attended the 2002 board meeting and who counseled and  prepared correspondence with the former board members before and after the board action in question (Howard Ross, Esq. whose current office is in Rockville Maryland)..

        b. Aside from the testimony of the parties and witnesses regarding their oral agreement, the primary evidence regarding the Board meeting is correspondence, the Charter, Bylaws and meeting minutes and resolutions. As to damages the documents are under control of Mr. K who is a party. Defendants have not proffered the names of any "unwilling witnesses" that

this court cannot compel to appear before it. On the other hand, Plaintiff

may has American witnesses (former counsels) necessary to prove its case,

who would not be subject to process in Germany, but would be subject to

the court's subpoena power because they are in the United States, in D.C.,

Maryland and other states.

c. As for the cost of obtaining the attendance of willing witnesses, in a case

such as this, where witnesses are in different locations around the world,

there will be logistical problems and the trial will be expensive no matter

where it is held. It is up to the parties to suggest procedures to the trial

court to streamline and hold down the costs of litigation. Cf. Coulibaly, id

at ¶69.

2) the availability of procedures to compel the appearance of unwilling witnesses,

a. Plaintiff intends to bring in its experts on American law who will testify

as to the applicability of Delaware Law counsel who will testify as to the

applicability of American law

b. Mr. Howard Ross Esq. who prepared correspondence based upon the

corporate charter and Delaware law dismissing the directors prior to their

actions

c. Plaintiff intends to end this matter in mediation or by Summary

Judgment.

d. Experts on damages and loss of profits are available in the United States

3) the cost of obtaining attendance of willing witnesses;

a. Defendants' make mere averments as to witnesses in Germany. There

are none other than the Defendants themselves, Mr. Grueter their agent and

the individuals subject the Mr. K's control that have the records of product

sales by his company.

    b. On the other hand there are American witnesses noted above who would

    have to travel to Germany.

4) the possibility of viewing premises, if view would be appropriate to the action;

(Not Relevant.)

5) all other practical problems concerning the ease, expedition and expense of the

trial;

    a. Document production can be done in Germany.  The principal subpoena

    will be to PK for records of sales of products and other corporate records.

    As a defendant who was present at the Board meeting in 2002 he is subject

    to

    b. Depositions of the Defendants PK over whom there is personal

    jurisdiction can be done in Germany. U.S. counsel will have to travel their.

    This is not an undue burden.  It is no more costly to travel to Germany to

    conduct discovery than it is to travel to California to do the same.

    c. The travel costs will be miniscule compared to the lawyer costs in either

    place at the rates of $300 to $500 per hour. Plaintiff's counsel does not

    charge for travel time.

    d. As for the cost of obtaining the attendance of willing witnesses, in a case

    such as this, where witnesses are in different locations around the world,

    whether D.C. or Germany, there will be logistical problems and the trial

    will be expensive no matter where it is held. It is up to the parties to

    suggest procedures to the trial court to streamline and hold down the costs

    of litigation. Coulibaly, at ¶ 69 "

6) the enforceability of a judgment once obtained;

a. U.S. judgments properly considered are enforceable in Germany.   While Punitive damages may be an issue punitive damages in this instance is unlike punitive damages in product liability suits that have gotten attention abroad, most notably the McDonald's coffee case.  As EU law is developing on substantive matters and diligence is being paid to duties of corporate officers and board members punishment in such civil cases as this may not be against EU public policy.  This is a risk plaintiff assumes willingly.

7) evidence that the plaintiff attempted to vex, harass or oppress the defendant by his choice of forum,  (there is no such evidence) and

8) the relative advantages and obstacles to fair trial.  Defendants raise the fact of pending in Germany, though unresolved criminal charges against Mr. Riesinger and Ms. Weber and Mr. K in relation to NAWA USA Inc. proceedings which we believe were instigated by some of the Defendants.  Those proceedings have been going on for over a year and a half and have come to no conclusion other than the most serious charges have been dropped.  It is obvious as it is here that some of the Defendants intend to use that to prejudice this case if it is moved to Germany. This is another reason not to change venue.

**Public Interest**

1) administrative difficulties caused by local court dockets congested with foreign litigation;  As stated in Coulibaly at ¶ 71 "we note that any additional case adds a burden to an already overburdened system; in and of itself, however, that cannot be a reason to bar a litigant from our courts."

2) the local interest in having localized controversies decided at home;  The second public factor, "the local interest in having localized controversies decided

at home," has to be construed in the context of a city as international in character as the District of Columbia, where numerous foreign nationals travel, live, work and study. We would be hard-pressed to exclude the disputes of foreign nationals who come to the District of Columbia, where a company comes here to do business, albeit initially unsuccessfully.  CF. Coulibaly at ¶71.

3) the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation, While Plaintiff has requested a jury it is likely that the case will be decided on summary judgment as most issues are issues of law and issues of fact are likely uncontested.

and

4) the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction.  The issue of which law is applicable has already arisen in this matter.  Defendants' argue that the case is a "German case."  It is not at all. The source of the governing law is U.S. law, Delaware law which is similar if not identical to D.C. law on the relevant issues.

3. As also noted in Coulibaly "("Given the clear conflict between the laws of the two jurisdictions, we must decide which jurisdiction has the greater interest in the application of its substantive law."); Fowler v. A & A Co., 262 A.2d 344, 348 (D.C. 1970) (noting that there was no conflict of laws where "in this area of contract law, both Maryland and the District of Columbia are the same"). … In construing a contract where the laws of two jurisdictions are involved, the forum applies the law of the state which has the "'more substantial interest in the resolution of the issue.'" Fowler, supra, 262 A.2d at 348 (quoting McCrossin v.

Hicks Chevrolet, Inc., 248 A.2d 917, 921 (D.C. 1969)).Id ¶¶72-73. Clearly

Delaware and D.C. - and the principals of American corporate law and governance

apply. (Though we argue that the community interest - the community interest of

the District of Columbia to protect is resident is at issue, arguably the community

with dominant interest is Delaware. Certainly it is not Germany. However nothing

would be gained by moving the venue to Delaware in regards to forum

nonconveniens at it applies to the Defendants.)

54      Again Plaintiff reiterates that Plaintiff is not a stranger to the forum. Therefore the

Court should follow the District of Columbia and State courts that are reluctant to resort

to forum non conveniens if there are any contacts between the parties and the initially

chosen forum. This is especially true if the plaintiff is a citizen of that forum. For some

examples of how the courts balance these factors, see Silver v. Great Am. Ins. Co., 29

N.Y.2d 356, 328 N.Y.S.2d 398, 278 N.E.2d 619 (1972); Thomson v. Continental Ins. Co.,

66 Cal.2d 738, 59 Cal. Rptr. 101, 427 P.2d 765 (1967); Lonergan v. Crucible Steel Co. of

America, 37 I11.2d 599, 229 N.E.2d 536 (1967); Goodwine v. Superior Court of Los

Angeles, 63 Cal.2d 481, 47 Cal.Rptr. 201, 407 P.2d 1 (1965).

55      Further, in at least some states, it has been held that the doctrine cannot be

successfully invoked when the plaintiff is a resident of the forum state since, effectively,

one of the functions of the state courts is to provide a tribunal in which their residents can

obtain an adjudication of their grievances." The need to balance all the factors suggesting

the desirability or lack thereof of the forum in which suit is filed and the alternative

tribunal was reinforced by the Supreme Court in Piper Aircraft Company v. Reyno. 454

U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In that case a wrongful-death suit

arising out of a plane crash in Scotland was brought in the California state courts by

several non-resident Scottish persons against the manufacturer of the plane, a

Pennsylvania corporation, and the manufacturer of the plane's propellers, an Ohio

company. The action was removed to federal court and transferred to the Middle District

of Pennsylvania, on motion of the defendants. The defendants then obtained a dismissal of

the action on the ground of forum non conveniens.

### IV. FRAUD

Plaintiff respectfully removes the claim of fraud but reserves the right to amend

the complaint to identify specific fraud on the part of one or more Defendants based upon

evidence gather in discovery.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court deny Defendants

Motion TO DISMISS any and all the Defendants.


Respectfully Submitted

January 4, 2008

                            /s/  STEPHEN A. WEITZMAN/
                            STEPHEN A. WEITZMAN
                            D.C. Bar No. 15602
                            Attorney for Plaintiff
                            4950 Reedy Brook Lane
                            Columbia, Maryland 21045
                            (301) 596-5564


Pursuant to Judge Collyer's Standing Order a paper copy with Exhibits exceeding 25

pages will be submitted to Chambers.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically sent a copy of the foregoing Plaintiff's

Memorandum of Points and Authorities in Opposition to the Motions of Defendants Dr.

Hans-Georg Bottler, Ferdy Egli, Bernd Stern, Peter Kanzlsperger, Alexander Gruter, and

NAWA VERTRIEBS-GMBH to Dismiss Plaintiff's Complaint to Joseph Semo, Esquire,

SEMO LAW GROUP, 1800 M Street, N.W., Suite 730S, Washington, D.C. 20036, E-

mail: joesemo@joesemo.com, and to Dana M. Richens, Esquire, SMITH, GAMBRELL &

RUSSELL, LLP, Suite 3100, Promenade II, 1230 Peachtree Street, N.E., Atlanta, Georgia

30309-3592 E-mail: drichens@sgrlaw.com, and to Rachel King Powell, Esquire, SMITH,

GAMBRELL & RUSSELL, LLP, Suite 3100, Promenade II, 1230 Peachtree Street, N.E.,

Atlanta, Georgia 30309-3592 E-mail: rpowell@sgrlaw.com, this 4th day of January 2008.

/STEPHEN A. WEITZMAN /s/
STEPHEN A. WEITZMAN
 D.C. Bar No. 15602
Attorney for Plaintiff

---

[1] The defendants have not raised any issue of subject matter jurisdiction and such jurisdiction is conceded.

[2] See Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L. Ed. 92 (1987), AGS International Services S.A v. Newton USA Limited, 346 F. Supp. 2d 64 (2004) and Shoppers Food Warehouse, v. Moreno, 746, A. 2d  320, 330-332 (D.C. en banc) cert. denied, 530 U.S. 1270 (2000 or 2001).

[3]     I begin my resolution of this case with a discussion of the applicable contract  law principles. In general terms, corporate instruments such as charters and bylaws are interpreted in the same manner as other contracts.29[29. Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 342-43 (Del.1983).] at 309.

[4] Defendant's argument under 424 (b) is also spurious.  As found by the D.C. Court of Appeals: "Based upon our review of nexus tests used in other jurisdictions, the criticisms leveled at some of them, and the Supreme Court's admonition that there are no "mechanical tests" or "talismanic formulas" for the determination of personal jurisdiction, we see no reason to deviate from - and thus we reaffirm - our past decisions which have interpreted the "arise from" language of § 13-423 (b) flexibly and synonymously with "relate to" or having a "substantial connection with," in the same way that the Supreme Court's due process analysis has used these terms interchangeably. Shoppers, Id. 76.

[5] 29 DC Code 101.122 Revocation of Certificate of Authority of Foreign Corporation for Failure to File

Annual Report or Pay 2-Year Report Fee; 29 DC Code 101.123 Proclamation of Revocation, etc. (allows the corporation to maintain lawsuits for a period of three years); 29 DC Code 101.127  Proclaimed Corporations - Procedure for Reinstatement