UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAWA USA, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1150 (RMC) |
| ) | |
| HANS-GEORG BOTTLER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

While Defendants, citizens of Germany and Switzerland, seek dismissal of this case based on lack of personal jurisdiction, Plaintiff NAWA USA, Inc. contends that Defendants had minimal contacts with the District of Columbia because some of them attended a meeting in the District. Under the facts presented here, this single meeting was simply insufficient to establish sufficient contacts with the District for the purpose of exercising personal jurisdiction. Accordingly, this case will be dismissed.

**I. FACTS**

NAWA USA, Inc. ("NAWA"), a corporation organized under the laws of Delaware with its principal place of business in the District of Columbia, researches, develops, manufactures, markets, and distributes medical devices, drugs, and cosmetics. Named as Defendants are a German company, NAWA Vertriebs-GMBH, as well as the following five individuals, all foreign residents: Dr. Hans-Georg Bottler, Mr. Ferdy Egli, Mr. Bernd Stern, Mr. Peter Kanzlsperger, and Mr.

Alexander Grueter.[1] Dr. Bottler and Messrs. Egli, Stern, and Kanzlsperger are former directors of Plaintiff. Mr. Grueter is an attorney who assisted them in the alleged unlawful conduct described in the Complaint. The Complaint, filed June 23, 2006, sets forth seven counts:

> Count I – Breach of Employment Contract;
>
> Count II – Fraud and Deceit;
>
> Count III – Theft and Conversion;
>
> Count IV – Unfair Competition;
>
> Count V – Breach of Fiduciary Duty;
>
> Count VI – Injunctive and Declaratory Relief; and
>
> Count VII – Accounting.

Count I alleges that Mr. Kanzlsperger was employed as the vice president and chief operating officer of NAWA under a January 2, 2000 contract[2] and that he breached the contract by improperly using and disclosing proprietary information. Compl. ¶¶ 26-30; *see* Pl.'s Opp'n, Ex. E, employment contract. Counts II through VII allege in essence that Defendants misappropriated NAWA's funds, property, and intellectual property for the use of NAWA Vertriebs-GMBH — that Dr. Bottler and Messrs. Egli, Stern, and Kanzlsperger improperly sold shares of NAWA to Mr. Kanzlsperger at a board meeting on June 21, 2003, when Defendants had been removed as board members on May 23, 2003. Defendants filed a motion to dismiss for lack of personal jurisdiction; NAWA opposes.

---

[1] Dr. Bottler and Messrs. Stern, Kanzlsperger, and Grueter are residents of Germany; Mr. Egli is a resident of Switzerland.

[2] Mr. Kanzlsperger's employment was terminated on June 30, 2003. Compl. ¶ 10.

## II. LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *accord Murphy v. PriceWaterhouseCoopers LLP*, 357 F. Supp. 2d 230, 242 (D.D.C. 2004). The plaintiff must allege specific facts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *See id.* Such a showing must be made with respect to each defendant individually. *Overseas Partners, Inc. v. Progen*, 15 F. Supp. 2d 47, 50 (D.D.C. 1988). In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456. The court need not treat all the plaintiff's allegations as true, however. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.*

## III. ANALYSIS

Defendants argue that dismissal under Rule 12(b)(2) is warranted because they are not subject to personal jurisdiction in the District of Columbia. The D.C. long arm statute, D.C. Code § 13-423, authorizes the exercise of personal jurisdiction based on a defendant's conduct in or directed toward the District of Columbia. The statute provides that personal jurisdiction exists over a person as to a claim for relief arising from the person's

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a); s*ee also GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).[3] "This provision is given an expansive interpretation that is coextensive with the due process clause." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (internal quotation marks omitted). Thus, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

The question, then, is whether Defendants "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helmer*, 393 F.3d at 205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (alteration in original)). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988). Stated differently, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

---

[3] Subsection (b) qualifies the reach of the statute by noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. Code § 13-423(b).

297 (1980).

It has long been the law that an absence of physical contacts will not defeat personal jurisdiction so long as the defendant's efforts are purposefully directed toward residents of another state. *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 476 (1985). Just as clearly, transactions by telephone and facsimile alone can, depending on the circumstances, be an adequate basis for personal jurisdiction. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 n.4 (D.C. Cir. 2002). "It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001).

Even so, a plaintiff may not rely only on his own activity within the forum to establish the existence of the defendant's minimum contacts. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). For example, in *Gibbons & Co., Inc. v. Roskamp Inst.*, No. 06-720, 2006 WL 2506646 (D.D.C. Aug. 28, 2006), the plaintiff — Gibbons & Co., a D.C. corporation — entered into a contract with a Roskamp, a Florida company, in which Gibbons agreed to lobby Congress on Roskamp's behalf. *Id.* at *1. During the course of dealing between the parties, they exchanged between 50 and 75 emails and more than 75 telephone calls; in addition, representatives of Roskamp traveled to the District to meet with Gibbons and Congressional officials. *Id.* The relationship eventually soured, and Gibbons sued Roskamp in this Court for breach of contract. *Id.* The Court held that Gibbons had failed to establish that Roskamp had minimum contacts with the District of Columbia. *Id.* at *3. First, the Court reasoned that Gibbons had relied primarily on its own activities in the District, which was insufficient to establish Roskamp's minimum contacts: "[A] [p]laintiff's unilateral activities, even if performed with the goal of ultimately benefitting the defendant, do not satisfy the requirement that [the] defendant itself have some minimum contact with the District."

5

*Id.* Second, the court found that Roskamp's emails and telephone communications were "incidental to the contract," and the mere fact that Roskamp retained Gibbons, which set into motion Gibbons's activities in the District, did not constitute an invocation by Roskamp of the benefits of the District's laws. *Id.*

With respect to contractual obligations, the Supreme Court has "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). This standard demands that an out-of-state resident do more than simply enter into a contract with a resident of the forum state. *Helmer*, 393 F.3d at 206. Only if a non-resident "enters into a contract that has a 'substantial connection' with the forum" will he be found to have minimum contacts with the forum:

> Because a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction, a court must evaluate the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum.

*Helmer*, 393 F.3d at 205 (internal quotation marks omitted). *See also Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 163 (D.C. 2000) (refusing to exercise personal jurisdiction to officers and directors merely because they were employees of a company with contacts with the District).

The question here is whether NAWA has alleged specific facts demonstrating that each Defendant had a "substantial connection" with the District of Columbia or that each Defendant otherwise purposefully availed it/himself of the privilege of conducting business in the District. NAWA's allegations reveal that Defendants had even less contact with the District of Columbia than

did the defendant in *Gibbons*. NAWA asserts that Dr. Bottler and Messrs. Egli, Stern, and Kanzlsperger are former board members of NAWA, a corporation that does business in the District of Columbia, and that they assumed those responsibilities at a board of directors meeting in the District of Columbia in February, 2002.[4] NAWA also alleges that Mr. Kanzlsperger entered into an employment contract with NAWA. Just because Defendants were employed by, or were members of the board of directors of, a company which does business in the District, is not by itself sufficient to establish minimum contacts. *See Burger King*, 471 U.S. at 479; *Flocco*, 752 A.2d at 163. A contract must have a "substantial connection" with the forum, which depends upon a realistic analysis of the parties' business relationship. *Helmer*, 393 F.3d at 205. NAWA may not rely only on its own activity within the District to establish the existence of Defendants' minimum contacts. *See Hanson*, 357 U.S. at 253. The allegation of a single board meeting in the District is simply insufficient to establish jurisdiction. NAWA makes no allegation that the February 2002 board meeting was related to the alleged improper sale of NAWA shares to Mr. Kanzlsperger at the June 21, 2003 board meeting. Defendants alleges that all other board meetings took place in Germany, *see* Reply at 3, and NAWA does not dispute this allegation.

    Further, NAWA failed to allege any facts whatsoever indicating that NAWA Vertriebs-GMBH had any contact with the forum. With regard to Mr. Grueter, NAWA's only allegation is that he provided legal advice to the other individuals. Pl.'s Opp'n at 2. This is wholly insufficient to establish minimum contacts for the purpose of personal jurisdiction.

---

[4] NAWA alleges that Mr. Egli attended the February 2002 meeting by telephone, and Defendants contend that he did not attend at all. *See* Reply at 4. Also, while NAWA indicates that it is qualified to do business in the District, Defendants assert that it was not registered to do business in the District at the time of the February 2002 meeting until "well after" it filed the Complaint. *See id.* at 3. For the purpose of this ruling, the Court treats NAWA's allegations at true.

In sum, there is no indication that Defendants "reached out" to the District of Columbia to establish "continuing relationships and obligations" with a District resident. *See Burger King*, 471 U.S. at 473. On these facts, the Court cannot find that Defendants had a "substantial connection" with the District of Columbia such that Defendants purposefully availed themselves of conducting business here. *See Helmer*, 393 F.3d at 205. The Court therefore lacks personal jurisdiction over Defendants and the case must be dismissed.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion to dismiss [Dkt. #45] will be granted. A memorializing order accompanies this Memorandum Opinion.


Date: February 4, 2008                             /s/
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge